**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARSH & McLENNAN AGENCY LLC,

                Plaintiff,

          - against -

ALLIANT INSURANCE SERVICES, INC.,
ANDREW OLDENBURG, ELIZABETH
McKINNEY, KIMBERLY MOORE, and
DANIELLE BLACK,

                Defendants.

Case No. 25-cv-06936

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER, A
<u>PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

SUMMARY OF FACTS .................................................................................... 3

LEGAL STANDARD........................................................................................ 6

ARGUMENT .................................................................................................... 6

I.      MMA IS NOT LIKELY TO SUCCEED ON ITS CLAIMS ........................... 6

     A.      The Court Lacks Personal Jurisdiction Over Alliant ............................. 6

     B.      The Court Should Abstain from Hearing This Action Under the First-Filed Rule ...................................................................................................... 9

     C.      MMA Has Not Presented Facts Sufficient to  Establish a Likelihood of Success on the Merits of any Claim.................................................... 10

     D.      MMA Is Unlikely to Succeed on Its Breach of Contract Claims (Counts I-V) ......................................................................................................... 11

          1.      The Restrictive Covenants Against Soliciting or Servicing Clients or Prospective Clients Are Unenforceable (Counts I, III, IV) ................ 12

               a.      The Restrictive Covenants are Overbroad.................................. 12

               b.      The Restrictive Covenants Should Not Be Partially Enforced ................................................................................... 16

          2.      The Restrictive Covenants Against Solicitation of MMA's Employees Are Unenforceable (Counts II & V)..................................... 18

          3.      The Restrictive Covenants Against Disclosure of "Confidential Information" Are Unenforceable (Counts III-V) ..................................... 19

     E.      MMA Is Unlikely to Succeed on Its Statutory and Tort Claims (Counts VI-X) ...................................................................................................... 21

          1.      Breach of Fiduciary Duty and Aiding and Abetting (Counts VI & VII)............................................................................................... 21

          2.      Tortious Interference (Counts VIII-X)..................................... 21

II.     MMA CANNOT DEMONSTRATE IRREPARABLE HARM.................................... 22

III.    THE EQUITIES DO NOT FAVOR INJUNCTIVE RELIEF ......................................... 24

IV.     NO INJUNCTION CAN OR SHOULD ISSUE AS TO ALLIANT ............................... 26

V.      MMA HAS NOT MET ITS BURDEN FOR EXPEDITED DISCOVERY.................... 27

CONCLUSION.................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*522 W. 38th St. N.Y. LLC v. N.Y. Hotel & Motel Trades*,
  517 F. Supp. 2d 687 (S.D.N.Y. 2007)...........................................................................................6

*A.X.M.S. Corp. v. Friedman*,
  948 F. Supp. 2d 319 (S.D.N.Y. 2013)........................................................................................23

*Aguas Lenders Recovery Group v. Suez, S.A.*,
  585 F.3d 696 (2d Cir. 2009)........................................................................................................8

*Anderjaska v. Bank of Am., N.A.*,
  2021 WL 877558 (S.D.N.Y. Mar. 9, 2021) .................................................................................6

*Aon Risk Servs. Co. v. Alliant*,
  415 F. Supp. 3d 843 (N.D. Ill. 2019) ........................................................................................26

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*,
  356 F. Supp. 3d 379 (S.D.N.Y. 2019)..........................................................................................9

*Ardis Health, LLC v. Nankivell*,
  2011 WL 4965172 (S.D.N.Y. Oct. 19, 2011) ...........................................................................23

*Arthur J. Gallagher & Co.*,
  36 Misc. 3d 1219(A) (Sup. Ct., Westch. Cnty. 2011).........................................................13, 20

*AssuredPartners of Oregon, LLC v. Reese*,
  2022 WL 18028029 (D. Or. Dec. 30, 2022) ...............................................................................2

*Baker's Aid v. Hussmann Foodservice Co.*,
  830 F.2d 13 (2d Cir. 1987)........................................................................................................23

*Banner Indus. of N.E., Inc. v. Wicks*,
  631 F. App'x 79 (2d Cir. 2016) .................................................................................................11

*Barbagallo v. Marcum LLP*,
  925 F. Supp. 2d 275 (E.D.N.Y. 2013) .................................................................................13, 24

*BDO Seidman v. Hirshberg*,
  93 N.Y.2d 382 (1999) ..........................................................................................................Passim

*Berdeaux v. OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021).........................................................................................7

*Beskrone v. Berlin*,
    656 F. Supp. 3d 496 (S.D.N.Y. 2023) ...................................................................8

*BNSF Ry. Co. v. Tyrrell*,
    581 U.S. 402 (2017) ...................................................................................6, 7

*Brodie v. Green Spot Foods, LLC*,
    503 F. Supp. 3d 1 (S.D.N.Y. 2020) ......................................................................19

*Brown & Brown, Inc. v. Johnson*,
    25 N.Y.3d 364 (2015) ...............................................................................11, 12

*Buchanan Capital Mkts., LLC v. DeLucca*,
    144 A.D.3d 508 (1st Dep't 2016) .......................................................................25

*Citibank, N.A. v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985) .............................................................................24

*Clarion Assocs., Inc. v. D.J. Colby Co.*,
    276 A.D.2d 461 (2d Dep't 2000) .......................................................................14

*Clarke v. TRIGO U.S., Inc.*,
    2023 WL 2456814 (S.D.N.Y. Mar. 10, 2023) ......................................................8

*Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*,
    586 F. App'x 768 (2d Cir. 2014) ........................................................................7

*Corporate Technologies, Inc. v. Harnett*,
    943 F. Supp. 2d 233 (D. Mass. 2013) ..................................................................26

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .......................................................................................7

*Deloitte & Touche, L.L.P. v. Chiampou*,
    222 A.D.2d 1026 (4th Dep't 1995) .....................................................................14

*Design Strategy Corp. v. Knack Sys., LLC*,
    2007 WL 4562926 (S.D.N.Y. Dec. 18, 2007) ......................................................12

*Devos, Ltd. v. United Returns, Inc.*,
    57 Misc. 3d 1211(A) (Sup. Ct., Suffolk Cnty. 2017) .............................................20

*DeWitt Stern Grp., Inc. v. Eisenberg*,
    257 F. Supp. 3d 542 (S.D.N.Y. 2017) .................................................................20

*Dexter 345 Inc. v. Cuomo*,
    663 F.3d 59 (2d Cir. 2011) ..............................................................................22

*Frank Crystal & Co., Inc. v. Dillman*,
    84 A.D.3d 704 (1st Dep't 2011) ....................................................................13

*Gilman & Ciocia, Inc. v. Randello*,
    55 A.D.3d 871 (2d Dep't 2008) .....................................................................18

*Heartland Sec. Corp. v. Gerstenblatt*,
    2000 WL 303274 (S.D.N.Y. Mar. 22, 2000) ................................................18

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
    2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ..................................................8

*Inspirit Dev. & Constr., LLC v. GMF 157 LP*,
    203 A.D.3d 430 (1st Dep't 2022) ..................................................................21

*Int'l Creative Mgmt., Inc. v. Abate*,
    2007 WL 950092 (S.D.N.Y. Mar. 28, 2007) ................................................20

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,
    596 F.2d 70 (2d Cir. 1979) ............................................................................22

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004) ..........................................................14

*Kanan, Corbin, Schupak & Aronow, Inc. v FD Intl., Ltd.*,
    8 Misc.3d 412 (Sup. Ct. 2005) .....................................................................25

*King v. Marsh & McLennan Agency, LLC*,
    67 Misc.3d 1203(A) (Sup. Ct. 2020) .............................................................2

*Koh v. Koo*,
    2023 WL 5352786 (S.D.N.Y. Aug. 21, 2023) ...............................................8

*Leon M. Reimer & Co. v. Cipolla*,
    929 F. Supp. 154 (S.D.N.Y. 1996) ...............................................................14

*Life Techs. Corp. v. AB Sciex Pte. Ltd.*,
    2011 WL 1419612 (S.D.N.Y. Apr. 11, 2011)...............................................23

*Lionella Prods. Ltd. v. Mironchik*,
    2012 WL 3040346 (N.Y. Sup. Ct. July 13, 2012) ...................................16, 17

*Lion's Prop. Dev. Grp. LLC v. New York City Reg'l Ctr., LLC*,
    115 A.D.3d 488 (1st Dep't 2014) ..................................................................21

*Lucente v. Int'l Bus. Machs. Corp.*,
    310 F.3d 243 (2d Cir. 2002)...........................................................................11

*Lusk v. Vill. of Cold Spring*,
 475 F.3d 480 (2d Cir. 2007)..............................................................................6

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
 714 F.3d 714 (2d Cir. 2013)..............................................................................8

*Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc., Johnny Osborne, Margaux Stone, and Rachel Murray*,
 2025 WL 304500 (S.D.N.Y. Jan. 27, 2025) ..............................................2, 10, 11

*Marsh USA, Inc. v. Alliant Ins. Servs., Inc.*,
 49 Misc. 3d 1210(A) (Sup. Ct. N.Y. Cty. 2015)........................................... Passim

*Marshak v. Reed*,
 2000 WL 33152076 (E.D.N.Y. Oct. 17, 2000).......................................................10

*Marshall & Sterling, Inc. v. Southard*,
 148 A.D.3d 1009 (2d Dep't 2017) ......................................................................13

*Mercer Health & Benefits LLC v. DiGregorio*,
 307 F. Supp. 3d 326 (S.D.N.Y. 2018)..................................................................25

*Mersen USA EP Corp. v. TDK Elecs. Inc.*,
 594 F. Supp. 3d 570 (S.D.N.Y. 2022)....................................................................8

*MSK Ins., Ltd. v. Emps. Reinsurance Corp.*,
 212 F. Supp. 2d 266 (S.D.N.Y. 2002). ) ...............................................................9

*Nat. Tax and Financial Services, Inc. v. Ciocia*,
 2021 WL 860179 (N.Y. Sup. Ct. Mar. 08, 2021) ...................................................18

*New York by Schneiderman v. Griepp*,
 2017 WL 3129764 (E.D.N.Y. July 20, 2017)........................................................27

*Notaro v. Koch*,
 95 F.R.D. 403 (S.D.N.Y. 1982) ..........................................................................27

*Prod. Res. Grp., L.L.C. v. Oberman*,
 2003 WL 22350939 (S.D.N.Y. Aug. 27, 2003).......................................................23

*Purchasing Assocs., Inc. v. Weitz*,
 13 N.Y.2d 267 (1963) ......................................................................................15

*QBE Americas, Inc. v. Allen*,
 2022 WL 889838 (S.D.N.Y. 2022)..................................................................18, 19

*Regions Bank v. Wieder & Mastroianni, P.C.*,
 170 F. Supp. 2d 436 (S.D.N.Y. 2001).............................................................9, 10

*Reed, Roberts Assocs. v. Strauman,*
    40 N.Y.2d 303 (1976) ........................................................................12

*Riedman Corp. v. Gallager,*
    48 A.D.3d 1188 (4th Dep't 2008) ......................................................19

*Schroeder v. Pinterest Inc.,*
    133 A.D.3d 12 (1st Dep't 2015) ........................................................21

*Shearson Lehman Bros. Holdings, Inc. v. Schmertzler,*
    116 A.D.2d 216 (1st Dep't 1986) ................................................15, 16

*Scott, Stackrow & Co., C.P.A.'s, P.C. v. Skavina,*
    9 A.D.3d 805 (3d Dep't 2004) .....................................................13, 17

*Shepard Indus., Inc. v. 135 E. 57th St., LLC,*
    1999 WL 728641 (S.D.N.Y. Sept. 17, 1999) ....................................23

*SKF USA, Inc. v. Bjerkness,*
    636 F. Supp. 2d 696 (N.D. Ill. 2009) ...............................................26

*Uni-World Capital L.P. v. Preferred Fragrance, Inc.,*
    43 F. Supp. 3d 236 (S.D.N.Y. 2014)................................................21

*Villalobos v. Telemundo Network Grp. LLC,*
    2024 WL 5008980 (S.D.N.Y. Dec. 6, 2024) ......................................8

*Weight Watchers Intern., Inc. v Luigino's, Inc.,*
    423 F.3d 137 (2d Cir. 2005) .............................................................24

*Weiser LLP v. Coopersmith,*
    74 A.D.3d 465 (1st Dep't 2010) ........................................................14

*William Gluckin & Co. v. Int'l Playtex Corp.,*
    407 F.2d 177 (2d Cir. 1969).................................................................9

*Zama Capital Advisors LP v. Universal Entertainment Corp.,*
    2025 WL 968783 (S.D.N.Y. Mar. 31, 2025) ......................................8

**Other Authorities**

Fed. R. Civ. P. 65...................................................................................6

Or. Rev. Stat. Ann § 15.320 ...................................................................2

Or. Rev. Stat. Ann § 653.295..................................................................2

Defendants Andrew Oldenburg, Elizabeth McKinney, Kimberly Moore, and Danielle Black (collectively the "Individual Defendants") and Defendant Alliant Insurance Services, Inc. ("Alliant") respectfully submit this memorandum of law in opposition to plaintiff Marsh & McLennan Agency LLC's ("Plaintiff's" or "MMA's") application for a temporary restraining order, a preliminary injunction, and expedited discovery (the "TRO Application"). Dkts. ##16-18.[1]

## PRELIMINARY STATEMENT

MMA fails to satisfy its heavy burden to obtain a temporary restraining order or a preliminary injunction against its former employees, the Individual Defendants, or their new employer, Alliant.

First, MMA has not demonstrated that it is likely to prevail on the merits of its claims. As a threshold matter, Alliant is not subject to general personal jurisdiction in New York, and there is no specific personal jurisdiction either, given that the case exclusively concerns events in Oregon.[2] Therefore, MMA is unlikely to establish this Court's jurisdiction over Alliant, much less prevail on any claim against Alliant.

Furthermore, the present action is duplicative of the issues to be decided in a lawsuit Oldenburg filed against MMA over a month ago in Oregon, where all relevant events took place.[3]

---

[1]    Defendants note that despite initiating this action on August 21 (Compl., Dkt. #1), MMA chose the evening of August 29—the Friday before the Labor Day holiday weekend—to file its TRO Application. This is unbecoming gamesmanship, designed to disadvantage Defendants by forcing them to quickly prepare an opposition when traditionally businesses are closed and employees are on preplanned vacations, and reflects poorly on the intentions and merits of MMA's motion.

[2]    By appearing solely to respond to the TRO Application and contest personal jurisdiction, Alliant does not consent to the jurisdiction of this Court and reserves all rights.

[3]    All the Individual Defendants also reside in Oregon.

That lawsuit, which has since been removed to federal district court[4], seeks a declaratory judgment that the restrictive covenants in Oldenburg's MMA agreements are unenforceable based on an Oregon statute rendering noncompetition agreements with employees void and unenforceable unless certain conditions are satisfied.[5] *See* Declaration of Andrew Oldenburg (the "Oldenburg Decl.") at Exhibit 1 (Complaint in *Oldenburg v. Marsh & McLennan Agency, LLC*) (citing Or. Rev. Stat. § 653.295). The present, second-filed action asks the Court to grant emergency injunctive relief reaching the opposite conclusion. Defendants respectfully submit that the Court should abstain from determining these claims under the first-filed rule in deference to the first-filed Oregon proceeding. At a minimum, the dispositive arguments raised in the Oregon proceeding mean MMA cannot demonstrate a likelihood of prevailing on its claims here.

Additionally, even under New York law, the overbroad restrictive covenants at issue should not serve as grounds for the broad injunctive relief sought by MMA. *See, e.g., Marsh USA, Inc. v. Alliant Ins. Servs., Inc.*, 49 Misc. 3d 1210(A) (Sup. Ct. N.Y. Cty. 2015) ("*Marsh v. Alliant*").[6] This is consistent with case law holding that post-employment restrictive covenants are strongly disfavored under New York law. MMA's attempt to avoid a *BDO Seidman* analysis of its

---

[4]    *Oldenburg v. Marsh & McLennan Agency LLC*, 3:25-cv-01459 (D. Or. 2025).

[5]    While the contracts at issue contain a New York "governing law" provision, Oregon statutory law provides that Oregon law should govern employment contracts for the provision of services in Oregon, notwithstanding the presence of such a provision. *See* Or. Rev. Stat. Ann. § 15.320; *see also AssuredPartners of Oregon, LLC v. Reese*, No. 6:22-CV-00673-MC, 2022 WL 18028029, at *2 (D. Or. Dec. 30, 2022).

[6]    The TRO Application cites a recent decision from this District, in which the court claimed that a "New York County Commercial Division judge" had described *Marsh v. Alliant* as an "outlier." *See Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc., Johnny Osborne, Margaux Stone, and Rachel Murray.*, No. 1:24-CV-9914-MKV, 2025 WL 304500, at *6 (S.D.N.Y. Jan. 27, 2025). Respectfully, Defendants submit that is not an accurate characterization of the underlying authority. In the cited case, Judge Ostrager observed that "***Marsh*** describes [*Marsh v. Alliant*] as an 'outlier,'" without adopting that position himself. *King v. Marsh & McLennan Agency, LLC*, 67 Misc.3d 1203(A), at *4 (Sup. Ct. 2020) (emphasis added), *aff'd*, 191 A.D.3d 507 (1st Dep't 2021).

covenants by deeming Oldenburg a "seller of a business" falls flat in light of Oldenburg's scant 0.28% ownership.

Second, MMA cannot clearly and convincingly demonstrate that it faces irreparable harm in connection with its claims. New York law recognizes that lost profits, particularly in the case of a term-limited restrictive covenant, are ascertainable. If MMA ultimately prevails in this litigation, money damages are ascertainable and available.

Third, the equities do not favor MMA. The relief MMA is seeking would restrain *non-parties* from making their own choice of insurance broker and impose restrictions on the Defendants that extend well beyond what is permissible under New York law.

Finally, MMA has identified no legitimate basis for why Alliant—MMA's direct competitor in the insurance brokerage marketplace, with thousands of employees nationwide— should be restrained *at an institutional level* from competing with MMA for clients or employees. Such a restriction would plainly be anti-competitive and erode the free market.

MMA's TRO Application should be denied.

## SUMMARY OF FACTS

This case turns, in part, on whether the Individual Defendants—four former employees of MMA—breached *enforceable* restrictive covenants found in Non-Solicitation and Confidentiality Agreements signed by the Individual Defendants (together, the "MMA Employment Agreements")[7] and an additional Restrictive Covenant Agreement sign by Oldenburg (the "Restrictive Covenant Agreement").[8]

---

[7]    Theriault Decl., Exs. B-E (Dkts. ##17:2-5).
[8]    Theriault Decl., Ex. A (Dkt. #17:1).

But the TRO Application is largely devoid of facts about the Individual Defendants' conduct. Instead, MMA focuses on selectively quoting accusations and exhibits from unrelated lawsuits, which involved different employees, different agreements, different laws, different brokerages, and different facts. *See generally* Compl. ¶¶ 63-72, 90-96. Many of those cases are from years ago, dealing with events that took place even further back in time. *See id.*

Based on these selective quotations from unrelated proceedings, MMA prays the Court infer that (i) Alliant always acts "unlawfully" when hiring employees from a competitor; (ii) individuals hired by Alliant always engage in "unlawful" behavior during their transition period; and (iii) Alliant and the Individual Defendants must therefore have acted "unlawfully" here. But MMA cannot simply quote accusations, argumentation, and one-sided presentations of evidence from different proceedings and claim this proves it is entitled to the extraordinary remedy of injunctive relief in *this* case against *these* Defendants.

Presumably, the reason MMA focuses so much on irrelevant legal proceedings is because its allegations about Defendants' misconduct *in this case* are heavily based on speculation. The phrase "information and belief" accompanies numerous substantive allegations about Defendants' alleged misconduct. Specifically, the Complaint alleges the following: "On information and belief," Oldenburg precisely timed his resignation to give him maximum opportunity to remove confidential and proprietary materials that would aid him in servicing and soliciting MMA clients. Compl. ¶ 93. "On information and belief," Oldenburg provided Alliant with confidential and proprietary information. *Id.* ¶ 84. And "[o]n information and belief," Oldenburg and Alliant facilitated the solicitation of Oldenburg's MMA clients by assuring those clients that Oldenburg and his service team would personally service their accounts at Alliant. *Id.* ¶ 185.

Even the two purported smoking guns of the TRO Application are couched in speculation:

The first—a one-sentence July 15th email—demonstrates only that *after* Oldenburg's resignation from MMA, a former MMA client reached out to Alliant wishing to transfer its account to Alliant. Theriault Decl., Ex. G (Dkt. #17:7). Because the content of the email is insignificant, MMA resorts to pure speculation about the meaning and import of the email. MMA Mem. at 9-10. But contrary to MMA's conjecture that the email was "only possible" if Oldenburg had solicited this client and that there had been advance coordination with the client, the facts demonstrate otherwise. This client, like all the clients who allegedly left for Alliant, was never solicited by Oldenburg. Oldenburg Decl. ¶¶ 12-15; *see also* Martin Decl. ¶¶ 3-4. The client's own President, who sent the email, states that he was never solicited by Oldenburg, whether before or after he left MMA, and that there was no advance coordination or planning whatsoever. Del Vecchio Decl. ¶¶ 3-6. In fact, the client had no idea Mr. Oldenburg was departing MMA, and MMA's mischaracterization of the email is due to its own redactions. *Id.*, Ex. 1.

In accordance with Alliant's Prospective Employee Departure Protocols, which Oldenburg signed (*see* O'Neill Decl., Ex. 1), Oldenburg did not solicit any MMA clients for Alliant before or after his resignation. Oldenburg Decl. ¶ 13. If an MMA client called Oldenburg after he resigned, he would inform them that he left MMA for Alliant and could not solicit them. *Id.* at 14. If a client wanted to learn more about Alliant, they would communicate with Alliant without input or influence from any of the Individual Defendants. O'Neill Decl. ¶¶ 11-12. If the client subsequently wanted to do business with Alliant, this decision was likewise made without input or influence from the Individual Defendants. *Id.*

The second is an email allegedly sent by a former MMA client purportedly informing MMA that Defendant McKinney was "helping us through this process" of transitioning the client's data from MMA to Alliant (as typically happens when a customer has moved from one broker to

another). Theriault Decl., Ex. H (Dkt. #17:8). Again, MMA relies on speculation to contend that

this is evidence of solicitation. The email does not explain why this client allegedly left MMA or

how that decision was formed. That McKinney may have helped a client with a data transition

*after* it had already left MMA is not evidence of solicitation. McKinney Decl. ¶ 7. Lastly, to the

extent the email demonstrates servicing former MMA clients, the non-servicing covenants of the

MMA Employment Agreements and the Restrictive Covenant Agreement, as explained below, are

overbroad and should not be enforced.

## <u>LEGAL STANDARD</u>

To establish entitlement to a temporary restraining order or a preliminary injunction, MMA

bears the burden to prove (1) immediate and irreparable harm absent injunctive relief; and (2)

either a likelihood of success on the merits or a serious question going to the merits to make them

a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor. *Lusk*

*v. Vill. of Cold Spring*, 475 F.3d 480, 485 (2d Cir. 2007); Fed. R. Civ. P. 65. "Injunctive relief is

an extraordinary remedy and one not lightly to be given." *522 W. 38th St. N.Y. LLC v. N.Y. Hotel*

*& Motel Trades*, 517 F. Supp. 2d 687, 688 (S.D.N.Y. 2007).

## <u>ARGUMENT</u>

I.    <u>MMA IS NOT LIKELY TO SUCCEED ON ITS CLAIMS</u>

A.    **The Court Lacks Personal Jurisdiction Over Alliant**

"[A] court may exercise two types of personal jurisdiction over a corporate defendant

properly served with process—specific and general." *Anderjaska v. Bank of Am., N.A.*, No. 1:19-

CV-3057-LTS-GWG, 2021 WL 877558, at *1 (S.D.N.Y. Mar. 9, 2021) (citation omitted). "[T]he

Fourteenth Amendment's Due Process Clause does not permit a State to hale an out-of-state

corporation before its courts when the corporation is not 'at home' in the State and the episode-in-

suit occurred elsewhere." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 405-06 (2017) (citation omitted).

Alliant is subject to neither specific nor general personal jurisdiction in this action. Regarding specific jurisdiction, Alliant is not a party to any of the MMA Employment Agreements, so jurisdiction over Alliant cannot be based on the contractual language in those Agreements. Furthermore, all the alleged tortious conduct attributed to Alliant is centered in Oregon, where the Individual Defendants work and reside. The Complaint offers nothing except conclusory assertions to suggest that New York had any connection to this action, and a plaintiff "cannot establish jurisdiction through conclusory assertions alone." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 395 (S.D.N.Y. 2021) (quoting *Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014)).

Regarding general personal jurisdiction, the Supreme Court has ruled that "the Fourteenth Amendment's Due Process Clause does not permit a State to hale an out-of-state corporation before its courts when the corporation is not 'at home' in the State and the episode-in-suit occurred elsewhere." *BNSF Ry. Co.*, 581 U.S. at 405-06 (citation omitted). Here, Alliant is a California corporation, with its principal place of business also in California. While it maintains six offices in New York—compared to seventeen in California, eleven in Texas, and over a hundred more across the nation—New York is not its "home" state. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014) ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.") Given that MMA cannot establish the Court's jurisdiction over Alliant, it has no possibility of prevailing on its claims against Alliant.

MMA invokes the "closely related" doctrine to argue that Alliant should be bound by forum selection clauses in the MMA Employment Agreements, even though Alliant is obviously not a signatory to those Agreements. This argument fails for at least two reasons: (1) it bases

jurisdiction on whether the non-signatory is closely related to the dispute instead of closely related to a party, which is the test in the Second Circuit; and (2) it violates constitutional principles of due process.

In the Second Circuit, application of the "closely related" doctrine depends on whether "the non-signatory is 'closely related' to another signatory." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013). The Second Circuit has found that a non-signatory is "closely related" to a signatory when the non-signatory is the source of the authority for the signatory to enter the contract, *id.* at 724, and when the non-signatory was a successor-in-interest to a signatory. *Aguas Lenders Recovery Group v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). Neither is the case here, nor has MMA pled facts suggesting a relationship between Alliant and the Individual Defendants similar to those situations.

In addition, MMA's attempt to base personal jurisdiction on an agreement Alliant never signed has been rejected by numerous decisions within this District on constitutional grounds. As explained by *Zama Capital Advisors LP v. Universal Entertainment Corp.*, No. 1:24-CV-01577-MKV, 2025 WL 968783 (S.D.N.Y. Mar. 31, 2025), while there is some historical precedent, "more recent cases have criticized the approach for running afoul of constitutional principles of due process." *Id. at* *16 (cleaned up). The Court "agree[d] that constitutional concerns prohibit[ed] the application of the 'closely related' doctrine" in the case, where, like here, a plaintiff sought to enforce a forum selection clause against a non-signatory defendant. *Id.*[9]

---

[9]  *Accord Villalobos v. Telemundo Network Grp. LLC*, No. 22 CIV. 7665 (JPC), 2024 WL 5008980, at *4-7; (S.D.N.Y. Dec. 6, 2024); *Koh v. Koo*, No. 22 Civ. 6639 (JMF), 2023 WL 5352786, at *3 (S.D.N.Y. Aug. 21, 2023); *Clarke v. TRIGO U.S., Inc.*, No. 22 Civ. 1917 (PKC), 2023 WL 2456814, at *5-6 (S.D.N.Y. Mar. 10, 2023); *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 513-15 (S.D.N.Y. 2023); *Mersen USA EP Corp. v. TDK Elecs. Inc.*, 594 F. Supp. 3d 570, 583-84 (S.D.N.Y. 2022); *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20 Civ. 967

**B.    The Court Should Abstain from
        Hearing This Action Under the First-Filed Rule**

"The Second Circuit has long followed the 'first-filed rule' in deciding whether a case

should be stayed or dismissed in favor of a case pending in another federal court." *Regions Bank*

*v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001) (citing *William Gluckin*

*& Co. v. Int'l Playtex Corp.,* 407 F.2d 177, 178 (2d Cir. 1969)). "Under this rule, where two actions

involve substantially the same issues, 'the first suit should have priority, absent the showing of a

balance of convenience in favor of the second action, or unless there are special circumstances

which justify giving priority to the second.'" *Regions*, 170 F. Supp. 2d at 439 (quoting *William*,

407 F.2d at 178). The purpose of the first-filed rule is to "avoid duplication of judicial effort, avoid

vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among

parties over related issues, and eliminate the risk of inconsistent adjudication." *Regions*, 170 F.

Supp. 2d at 439 (citation omitted).

Here, all the elements of the first-filed rule are met.

As an initial matter, the Oregon proceeding is the first-filed action because the complaint

in that proceeding was filed on July 14, 2025—over a month before the complaint in this action.

*MSK Ins., Ltd. v. Emps. Reinsurance Corp.,* 212 F. Supp. 2d 266, 267 n.3 (S.D.N.Y. 2002). Next,

the two matters involve substantially the same issue because both are dependent on the *same*

*fundamental question*: the enforceability of the restrictive covenants in MMA Employment

Agreements and the Restrictive Covenant Agreement.[10]  *See* Oldenburg Decl. at Exhibit 1. *See*

---

(LJL), 2021 WL 918556, at *8-9 (S.D.N.Y. Mar. 10, 2021); *Arcadia Biosciences, Inc. v.
Vilmorin & Cie*, 356 F. Supp. 3d 379, 390-96 (S.D.N.Y. 2019).

[10]    While the Oregon proceeding does not concern the MMA Employment Agreements for
Defendants McKinney, Moore, and Black, the at-issue restrictive covenants in Oldenburg's
MMA Employment Agreement are substantively the same, if not identical, to those of these
Defendants. *See* MMA Mem. at 5.

*Regions*, 170 F. Supp. 2d at 440  (finding cases involved the same issue where they would require the same factual and legal determination). And while not all Defendants are parties to the Oregon proceeding, abstention under the first-filed rule does not require that the two actions involve identical parties. *Regions*, 170 F. Supp. 2d at 441. This is especially true where, as here, the absent parties' interests align with those of a party to the first-filed action. *See Marshak v. Reed*, No. 96 CV 2292 (NG)(MLO), 2000 WL 33152076, *3 (E.D.N.Y. Oct. 17, 2000). Alliant and the other Individual Defendants share Oldenburg's interest in declaratory relief in the Oregon proceeding that the restrictive covenants are unenforceable.

Lastly, abstaining in deference to the first-filed Oregon proceeding would promote the principles underlying the rule. Proceeding with this action will duplicate the work of the Oregon district court, wasting judicial resources, and do so at the risk of inconsistent adjudications. *Regions*, 170 F. Supp. 2d at 440-41.

### C.    MMA Has Not Presented Facts Sufficient to Establish a Likelihood of Success on the Merits of any Claim

As set forth below, MMA's claims suffer from legal deficiencies that make it unlikely MMA will prevail on any cause of action. But even before reaching those legal arguments, the facts alleged in the Complaint do not make it reasonably likely that any misconduct has occurred.

MMA's TRO Application relies heavily upon the decision earlier this year in *MMA & McLennan Agency, LLC v. Alliant Insurance Services, Inc.*, *Johnny Osborne, Margaux Stone, and Rachel Murray*, No. 1:24-CV-9914-MKV, 2025 WL 304500 (S.D.N.Y. Jan. 27, 2025) ("*Osborne*"). But the stark difference between the evidentiary record in *Osborne* and the present case renders that decision readily distinguishable. In *Osborne*, the court repeatedly emphasized that, while the plaintiff had presented considerable evidence in support of its application for TRO, the defendants had failed to present rebuttal evidence. *Id.* at *1-2, *5-6, *8. Based on this one-

sided evidentiary record, the court entered extensive "findings of fact" in plaintiff's favor and then

held, based on those findings of fact, that plaintiff had established a likelihood of success on the

merits of its claims. *Id.* at *3, *5.

Here, as outlined in the Summary of Facts, MMA's claims against Alliant and the

Individual Defendants are based upon inference and speculation, which Defendants have

challenged through their submission of declarations under penalty of perjury, including

declarations from non-party clients. Defendants respectfully submit that the evidentiary record

before the Court in this case does not satisfy MMA's burden of proving a likelihood of success on

the merits.

**D.    MMA Is Unlikely to Succeed on Its Breach of Contract Claims (Counts I-V)**

New York strongly disfavors enforcement of post-employment restrictive covenants

against former employees.[11] "As a general rule, 'New York courts disfavor restrictive covenants

in the employment context and will generally enforce them only to the extent they are reasonable

and necessary to protect valid business interests.'" *Banner Indus. of N.E., Inc. v. Wicks*, 631 F.

App'x 79, 80 (2d Cir. 2016) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir.

2002) and *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999)). New York "require[s]

restrictive covenants to be reasonably limited in time, scope and geographical area, and to be

grounded in a legitimate business purpose." *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 369

(2015). Furthermore, because "covenants not to compete restrain trade, New York courts

---

[11]   The Agreements contain provisions stating they shall be interpreted in accordance with New
York law. *See* MMA Employment Agreements § 15; Restrictive Covenant Agreement § 10(c).
Without waiving any arguments that these provisions are unenforceable as to agreements
executed in Oregon, the Individual Defendants herein explain why, even under New York law,
MMA cannot prevail on its claims.

rigorously examine such covenants before enforcing them." *Design Strategy Corp. v. Knack Sys., LLC*, No. 07 CIV 0395 (JSR), 2007 WL 4562926, at *3 (S.D.N.Y. Dec. 18, 2007).

A restrictive covenant will be enforced under New York law only "if it: (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *BDO Seidman*, 93 N.Y.2d at 388-89 (citing *Reed, Roberts Assocs. v. Strauman*, 40 N.Y.2d 303, 307 (1976)) (emphasis in original). The burden is on the former employer to prove all three prongs; a failure to satisfy any of the three prongs renders the covenant invalid. *See id.*; *see also Brown & Brown, Inc.*, 25 N.Y.3d at 369-70 (citing *BDO Seidman*). MMA cannot prove that all three prongs are satisfied here, which means it cannot succeed on its claims.

The present case is comparable to an action an affiliate of MMA brought against several departing employees who also accepted jobs with Alliant. *See Marsh v. Alliant*, 49 Misc. 3d 1210(A). There, similar to the present case (Compl. ¶ 93), the plaintiff alleged that a departing employee had left with confidential information and proprietary materials. *See Marsh v. Alliant*, 49 Misc. 3d 1210(A), at *1-2. The plaintiff moved for a preliminary injunction, and the Court denied that request, holding that, *inter alia*, the restrictive covenants purporting to preclude the use of the plaintiff's "client information" and "personnel information" were not appropriately tailored to "protect the employer's legitimate interests" and hence were unenforceable. *Id.* at *3. As set forth herein, the same result is compelled here.

      **1.**      **The Restrictive Covenants Against Soliciting or Servicing Clients or Prospective Clients Are Unenforceable (Counts I, III, IV)**

            *a.*      *The Restrictive Covenants are Overbroad*

The restrictive covenants found in the MMA Employment Agreements (§ 1) and the Restrictive Covenant Agreement (§ 3) that purport to preclude former employees from soliciting

or servicing MMA's clients or prospective clients are unenforceable because they are facially overbroad under New York law.[12]

<u>First</u>, the restrictive covenants purports to prohibit the Individual Defendants from directly or indirectly soliciting or servicing *any* customer of MMA with whom the Individual Defendants had contact, including (i) clients with whom the Individual Defendants had a relationship that predated their employment with MMA; and (ii) clients that only came to MMA because of the Individual Defendants' independent recruitment efforts. *See* MMA Employment Agreements § 1(b). But, in *BDO Seidman*, the Court of Appeals recognized that an employer has *no* legitimate interest in prohibiting former employees from competing for the business of clients who came to the employer solely to avail themselves of the employee's services and only as a result of his or her own independent recruitment efforts, which the employer neither subsidized nor otherwise financially supported as part of a program of client development. *Id.* at 393; *see also Barbagallo v. Marcum LLP*, 925 F. Supp. 2d 275, 294 (E.D.N.Y. 2013), *aff'd*, 552 F. App'x 102 (2d Cir. 2014); *Scott, Stackrow & Co., C.P.A.'s, P.C. v. Skavina*, 9 A.D.3d 805, 806-08 (3d Dep't 2004) ("[R]estrictive covenant in which defendant agreed not to solicit or perform accounting services for any of plaintiff's clients for a period of two years after the termination of her employment" held to be overbroad and unenforceable under *BDO Seidman*); *Frank Crystal & Co., Inc. v. Dillman*, 84 A.D.3d 704, 705 (1st Dep't 2011); *Marshall & Sterling, Inc. v. Southard*, 148 A.D.3d 1009, 1011 (2d Dep't 2017); *Arthur J. Gallagher & Co. v. Marchese*, 36 Misc. 3d 1219(A), at *3

---

[12]    In an attempt to argue the restrictive covenants in the MMA Employment Agreements as reasonable, MMA alleges "Alliant requires its employees to agree to nearly identical restrictive covenants. (Compl. ¶ 76 & Ex. F at § 9(e))." MMA Mem. at 5. This is false. Alliant uses non-solicitation provisions for **producers** but does not use non-servicing provisions. *Compare* Compl. Ex. B § 1(b)(iii) *with* Compl. Ex. F § 9(e). MMA, on the other hand, imposes non-solicitation and non-servicing provisions at all levels, down to low-level account managers.

(Sup. Ct., Westch. Cnty. 2011), *aff'd*, 96 A.D.3d 791 (2d Dep't 2012). This can apply to clients recruited while at the employer, not only clients initially brought to the employer from a prior shop. *See, e.g., Weiser LLP v. Coopersmith*, 74 A.D.3d 465, 468 (1st Dep't 2010) (*BDO Seidman* carve-out of clients developed by employee independently and without assistance from the firm applied to clients produced while employed at former employer).

Second, the restrictive covenant purports to prevent the Individual Defendants from soliciting "prospective clients," which New York courts have also held is overbroad. *See Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 540 (S.D.N.Y. 2004) (the legitimate interest test does not justify enforcement of non-compete clause relating to prospects); *Clarion Assocs., Inc. v. D.J. Colby Co.*, 276 A.D.2d 461, 463 (2d Dep't 2000) (reversing portion of order applying to solicitation of potential customers).

Third, New York courts doing careful analyses have recognized that "non-accept" and "non-servicing" provisions are of a different order than "non-solicitation" prohibitions and should not be enforced. *See Leon M. Reimer & Co. v. Cipolla*, 929 F. Supp. 154, 158 (S.D.N.Y. 1996) (provision that purported to prohibit former employee from accepting an engagement from former employer's client who voluntarily and without solicitation contacted employee was overbroad and unenforceable); *accord Deloitte & Touche, L.L.P. v. Chiampou*, 222 A.D.2d 1026, 1027 (4th Dep't 1995) (preliminary injunction to enforce covenant not to compete exempted "plaintiff's former clients who had voluntarily and without solicitation sought out defendants after defendants left plaintiff's employ").

These same points invalidate the non-solicitation and non-servicing restrictive covenant found in the Restrictive Covenant Agreement (§ 3). MMA seeks to avoid this reality by arguing the Restrictive Covenant Agreement falls under the "more liberal 'sale of business' standard—not

the stricter rule applicable to employee agreements." MMA Mem. at 13. This is false. In fact, one of the cases MMA cites, *Purchasing Assocs., Inc. v. Weitz*, 13 N.Y.2d 267 (1963), demonstrates the sale of business standard is inapplicable to the Restrictive Covenant Agreement. There, the New York Court of Appeals held, "This court has applied the 'sale of business' rationale where an *owner, partner or major stockholder* of a commercial enterprise has sold his interest for an immediate consideration which was, in part, payment for the good will of the business, in terms of 'continuity of place' and 'continuity of name.'" *Id.* at 271 (emphasis added). Oldenburg was never an owner, partner, or major stockholder of PayneWest. To the contrary, Oldenburg was an employee who owned 0.28% of the outstanding stock in PayneWest at the time it was acquired by MMA. Oldenburg Decl. ¶ 8. He acquired a portion of this stock as part of an employee performance incentive program, and many other PayneWest employees owned similarly small accounts of stock. *Id.* Moreover, Oldenburg was not involved in the negotiations of the MMA acquisition of PayneWest, further demonstrating he was not an owner. *Id.* ¶ 9.

MMA's reliance on *Shearson Lehman Bros. Holdings, Inc. v. Schmertzler*, 116 A.D.2d 216 (1st Dep't 1986) fails because that case is distinguishable from this action. There, the minimal stockholder of the acquired business was *also a partner*. *Id.* at 219 ("[Defendant] was one of a small group of managing directors of Lehman Brothers (in effect partners))." The defendant received his shares only when he became a partner (*id.* at 220-222), and ownership of the business was restricted to partners. *See id.* at 224. Here, Oldenburg was never a partner of PayneWest, just an employee. Oldenburg Decl. ¶¶8-9. Oldenburg, like many employees at PayneWest, received small quantities of stock in PayneWest as a form of employee compensation. *Id.* Oldenburg did not have control over PayneWest and was not issued his shares—an even smaller portion of the outstanding stock than in *Shearson*—to memorialize membership in a controlling group. *Id.*

-15-

*Shearson* also leaves the door open for alternative results, noting that the "realistic difference" between applying a restrictive covenant against a minimal stockholder versus "the more familiar situation to the principal of a company being sold" can justify deviating from the sale of business standard. 116 A.D.2d at 224.

Each of the deficiencies listed above, standing alone, is sufficient to render the respective restrictive covenant unenforceable in its entirety unless MMA can demonstrate it is entitled to partial enforcement. *See BDO Seidman*, 93 N.Y.2d at 394. For the reasons set forth below, MMA has made no such showing here.

> b.    *The Restrictive Covenants Should Not Be Partially Enforced*

*BDO Seidman* sets out the circumstances under which a court may undertake to rewrite, or "blue pencil," an overbroad restrictive covenant, or else void it completely:

> [W]hen, as here, the unenforceable portion is not an essential part of the agreed exchange, a court should conduct a case specific analysis, focusing on the conduct of the employer in imposing the terms of the agreement. Under this approach, if the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing, partial enforcement may be justified.

*BDO Seidman*, 93 N.Y.2d at 394 (internal citations omitted). Thus, once an unreasonable aspect of an employee restrictive covenant has been identified (as it has been here, *see supra*), a court then has a two-part inquiry.

The first part of the inquiry requires the Court to determine whether the unenforceable portion of the restrictive covenant is essential. *Id.* Whether the unenforceable portion "is an essential part of the agreed exchange depends on its relative importance in the light of the entire agreement between the parties." *Lionella Prods. Ltd. v. Mironchik*, No. 108693/08, 2012 WL 3040346, at *12 (N.Y. Sup. Ct. July 13, 2012) (citation omitted).

-16-

Here, the unenforceable portions of the restrictive covenant are essential components of the exchange.

Concerning the non-solicitation and non-servicing provision in the Restrictive Covenant Agreement, MMA openly concedes this provision was essential. *See* Compl. ¶¶ 34, 38. As to the MMA Employment Agreements, these Agreements expressly spell out MMA's intention to preclude the Individual Defendants from soliciting "prospective clients" or from providing "services" to any of MMA's clients, and while the MMA Agreements limit the scope of the restrictive covenant to clients with whom the Individual Defendants had personal contact in the final two years of their employment, they contain no similar language excluding clients the Individual Defendants developed through independent effort. *See generally* MMA Employment Agreements § 1. Accordingly, rewriting the restrictive covenant to eliminate its objectionable elements would involve completely rewriting the types of conduct it restricts and the types of clients it applies to; a far cry from, *e.g.*, using a "blue pencil" to eliminate an unreasonable time limit from an otherwise reasonable and enforceable restrictive covenant. *See Lionella Prods.*, 2012 WL 3040346, at *12. This is the end of the inquiry: once a court determines that the unenforceable portion is essential, partial enforcement is unavailable. *See BDO Seidman*, 93 N.Y.2d at 394.

Furthermore, even if the unenforceable portions of the restrictive covenant were not essential, "[f]actors weighing against partial enforcement are the imposition of the covenant in connection with hiring or continued employment." *Scott, Stackrow & Co*, 9 A.D.3d at 807. MMA acknowledges that the covenants were all imposed as a condition of the Individual Defendants' employment at MMA, down to the lowest-ranking staff members (Oldenburg Decl. ¶ 10; McKinney Decl. ¶ 5; Moore Decl. ¶ 5; Black Decl. ¶ 4; MMA Mem. at 5), and MMA has made no effort to demonstrate "the absence of overreaching, the coercive use of dominant bargaining

-17-

power, or other anti-competitive misconduct" required by *BDO Seidman*, all of which militate

against "blue penciling" the covenants to bring them into compliance with New York law. *See id.*;

*see also Gilman & Ciocia, Inc. v. Randello*, 55 A.D.3d 871, 872 (2d Dep't 2008) (employer failed

to demonstrate "the absence of overreaching, the coercive use of dominant bargaining power, or

other anti-competitive misconduct"); *Heartland Sec. Corp. v. Gerstenblatt*, No. 99-CIV-

3694(WHP), 2000 WL 303274, at *10 (S.D.N.Y. Mar. 22, 2000) ("[plaintiff] has failed to show

that the purpose of the restrictive covenant was to protect a legitimate business interest [or] that it

did not overreach or use dominant bargaining power in reaching the agreements with defendants").

For these reasons, the covenants should not be enforced, even in blue-penciled form.

### 2.    The Restrictive Covenants Against Solicitation of MMA's Employees Are Unenforceable (Counts II & V)

Under New York law, a restrictive covenant that purports to prevent at-will employees

from encouraging their colleagues to pursue other employment is unenforceable. *See, e.g.*, *QBE*

*Americas, Inc. v. Allen*, 2022 WL 889838, at *11 (S.D.N.Y. 2022) (finding that a restrictive

covenant is unenforceable insofar as it purports to prohibit at-will employees, who have yet to

accept an offer of new employment, from inducing or even encouraging their coworkers to leave

their present employer, holding that there is no "legally cognizable interest" in preventing the

potential harm caused by the coordinated resignation of several employees); *Nat. Tax and*

*Financial Services, Inc. v. Ciocia*, No. 656999/2020, 2021 WL 860179, at *6 (N.Y. Sup. Ct. Mar.

08, 2021) (refusing to enforce no-solicit provision because "preventing potential harm to a

company's operations arising from the coordinated en masse resignation of several employees is

not a legally cognizable interest for the purposes of a restrictive covenant").

This is especially true regarding insurance brokers and agents. There is a wealth of case

law from this specific industry, holding that an insurance brokerage's desire to prevent its

employees from being hired by competitors is not a "legitimate interest" that can be enforced via a restrictive covenant. *See, e.g.*, *QBE Americas*, 2022 WL 889838, at *11 (collecting cases); *see also Riedman Corp. v. Gallager*, 48 A.D.3d 1188, 1189 (4th Dep't 2008).

### 3. The Restrictive Covenants Against Disclosure of "Confidential Information" Are Unenforceable (Counts III-V)

MMA alleges, "[o]n information and belief," that Oldenburg used his resignation to "access, retrieve, and remove confidential and proprietary materials that would aid in servicing and soliciting MMA clients on Alliant's behalf." Compl. ¶ 93. Outside this conclusory allegation, MMA pleads nothing in support of its claim that Oldenburg used confidential information to solicit MMA clients, or better yet, what specific information he allegedly took.[13] "Information and belief" allegations are typically insufficient even to state a cause of action, much less establish a likelihood of success on the merits. *See Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020) ("Courts in this Circuit look unfavorably upon conclusory pleadings made on information and belief, . . ." ) (collecting cases).

MMA also alleges that Oldenburg breached his confidentiality obligation by using "Confidential Information and Trade Secrets" to solicit the other Individual Defendants to join Alliant. Compl. ¶ 146. The confidential information Oldenburg allegedly used was information regarding the compensation of the other Individual Defendants. *Id*. ¶ 84. But once again, this allegation is based on nothing more than "information and belief." *Id.*

---

[13] Concerning confidentiality, MMA spends paragraphs describing allegedly confidential materials that a *different* former MMA employee allegedly took when they resigned (Compl. ¶¶ 5, 92) while failing to identify a single item that Oldenburg or the other Individual Defendants allegedly took.

Concerning the claims against Defendants McKinney, Moore, and Black, the Complaint makes no specific allegation that these individuals misappropriated, disclosed, or used confidential information.

In any event, courts will not enforce restrictive covenants that purport to preclude an employee's disclosure or use of "confidential information" if the information is not actually "confidential," as is the case here. *See*, *e.g.*, *Marsh v. Alliant*, 49 Misc. 3d 1210(A), at *2-3. The MMA Agreements expansively define the term "confidential information" as including "the identity of the Company's clients," "personnel information, such as the identity and number of the Company's other employees . . . , their salaries, bonuses, benefits, skills, qualifications, and abilities," and "any and all information in whatever form relating to any client or prospective client of the Company." MMA Employment Agreement § 4. New York law is clear that there is no legitimate, protectable interest in these types of information. *See Int'l Creative Mgmt., Inc. v. Abate*, No. 07 Civ. 1979 (PKL), 2007 WL 950092, at *4-5 (S.D.N.Y. Mar. 28, 2007) (information that can be obtained from the contacts themselves does not qualify as trade secrets or confidential information); *Arthur J. Gallagher & Co.*, 36 Misc. 3d 1219(A), at *4 (contact information is not confidential), *aff'd*, 96 A.D.3d 791 (2d Dep't 2012); *DeWitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 582-83 (S.D.N.Y. 2017) (contact information is neither confidential nor a trade secret), *aff'd*, 734 F. App'x 48 (2d Cir. 2018); *Devos, Ltd. v. United Returns, Inc.*, 57 Misc. 3d 1211(A), at *4 (Sup. Ct., Suffolk Cnty. 2017) (knowledge of a business's operations gleaned from working there "is not enough to constitute a trade secret" and is not entitled to contractual protection).

-20-

**E.    MMA Is Unlikely to Succeed on Its Statutory and Tort Claims (Counts VI-X)**

**1.    Breach of Fiduciary Duty and Aiding and Abetting (Counts VI & VII)**

MMA's breach of fiduciary duty claims fail as a matter of law because they are duplicative of MMA's breach of contract claims. *Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 244 (S.D.N.Y. 2014). The only unique factual allegation supporting the claim for breach of fiduciary duty is an allegation that Oldenburg supposedly failed to notify MMA that he planned to resign from his job. *See* Compl. ¶ 153. But there is no fiduciary duty to give notice of an intention to resign. And, given the failure to state a viable claim for breach of fiduciary duty, there can be no viable "aiding and abetting" claim against Alliant. *See Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 24-25 (1st Dep't 2015) (reciting elements of a cause of action for "aiding and abetting," the first of which is that there must have been an underlying breach of fiduciary duty).

**2.    Tortious Interference (Counts VIII-X)**

Regarding MMA's claims for tortious interference with contract (Counts VIII-IX), as set forth above, MMA is unlikely to establish that any contract at issue was breached and therefore is similarly unlikely to prevail on any claim for tortious interference. *See Inspirit Dev. & Constr., LLC v. GMF 157 LP*, 203 A.D.3d 430, 432 (1st Dep't 2022) (affirming dismissal of tortious interference claim where "there are no nonconclusory allegations that the subcontractors breached [the underlying contract]"); *Lion's Prop. Dev. Grp. LLC v. New York City Reg'l Ctr., LLC*, 115 A.D.3d 488, 488-89 (1st Dep't 2014) (affirming tortious interference with contract claim failed where there were no "enforceable agreements" allegedly breached).

As to MMA's claim for tortious interference with business relations (Count X), in *Marsh v. Alliant*, the court recognized: "The essential element of this claim is that the complaining party would have obtained the economic advantage but for the defendant's interference. Marsh has failed to show that it would have obtained the economic advantage of the departed clients but for the

-21-

defendants' interference. Although the pleadings indicate that the Individual Defendants [allegedly] solicited clients that subsequently departed for Alliant . . . the clients may have very well ended their relationships with Marsh after the Individual Defendants' departures, regardless of the Individual Defendants' solicitations." 49 Misc. 3d 1210(A), at *6. The court proceeded to conclude this meant the plaintiff had failed to establish a likelihood of success on the merits, and the same result is compelled here.

## II.    <u>MMA CANNOT DEMONSTRATE IRREPARABLE HARM</u>

MMA is a wholly owned subsidiary of Marsh & McLennan Companies, Inc. ("Marsh McLennan"), which is by far the world's largest insurance broker, with a reported $24.5 billion in revenue in 2024.[14] Even assuming, arguendo, that Oldenburg's book of business of "millions" was at risk, this injury would be a drop in a bucket for Marsh McLennan. MMA alleges it has lost $600,000 in annual revenue because of Defendants' misconduct. MMA Mem. at 10. That represents 0.0025% of Marsh McLennan's annual revenue. Any such injury is compensable by money damages and is, therefore, by definition, not an irreparable injury. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) ("[I]t has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages is adequate compensation a preliminary injunction will not issue."); *see also Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (an irreparable injury is only one that "is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." (citations omitted)). MMA already knows how much revenue it has generated from the clients at issue and, if it prevails in this litigation, could determine how much

---

[14] News Release, Marsh McLennan, *Marsh McLennan Reports Strong Fourth Quarter and Full-Year 2024 Results* (Jan. 30, 2025), https://www.marshmclennan.com/web-assets/files-for-download/investors/2025/mmc-4q-2024-news-release.pdf

revenue was lost from any clients who decide to seek insurance services elsewhere. *See id.* (also stating the "long history of operation by both Appellants ensures that they will be able to calculate money damages for any loss of goodwill they may have suffered if a taking is found"); *see also Prod. Res. Grp., L.L.C. v. Oberman*, No. 03 CIV. 5366 (JGK), 2003 WL 22350939, at *7 (S.D.N.Y. Aug. 27, 2003) (denying preliminary injunction where the "damages could be calculated, for example, by the amount of business that PRG allegedly lost to Oberman during the period it contends Oberman was not entitled to obtain that business. These losses do not constitute irreparable injury."); *Shepard Indus., Inc. v. 135 E. 57th St., LLC*, No. 97 CIV. 8447 (DAB), 1999 WL 728641, at *8 (S.D.N.Y. Sept. 17, 1999) (denying motion for preliminary injunction because "[p]laintiff's monetary loss is quantifiable," despite plaintiff's claim that it will lose "goodwill and reputation" with the tenant-clients it had built over time).

Furthermore, "contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate." *A.X.M.S. Corp. v. Friedman*, 948 F. Supp. 2d 319, 337 (S.D.N.Y. 2013) (citing *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987)). "A conclusory contract provision alone cannot establish irreparable harm. . . . [T]he Court must perform a standard inquiry into the existence of irreparable injury and simply use the contractual provision as one factor in its assessment." *Ardis Health, LLC v. Nankivell*, No. 11 Civ. 5013, 2011 WL 4965172, at *3 (S.D.N.Y. Oct. 19, 2011) (internal citations omitted); *see also Life Techs. Corp. v. AB Sciex Pte. Ltd.*, No. 11 Civ. 325 (RJH), 2011 WL 1419612, at *5 (S.D.N.Y. Apr. 11, 2011) (contractual language providing for per se irreparable harm is "merely one factor that must be considered in deciding whether irreparable harm would result if an injunction did not issue, and a plaintiff cannot rely on the contract provision alone to demonstrate irreparable harm" (internal citations omitted)).

In addition, MMA's delay in seeking an injunction betrays its claim of irreparable harm. The "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Weight Watchers Intern., Inc. v Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985). Each of the Individual Defendants submitted their resignations to MMA by July 15, 2025. Compl. ¶ 89. MMA asserts it knew by this same day that Oldenburg was allegedly breaching his restrictive covenants. *See* MMA Mem. at 9-10. Despite MMA's assertion that it will suffer irreparable harm absent immediate injunctive relief, MMA waited over six weeks to file the TRO Application.

Actions speak louder than words. If MMA genuinely faced the risk of irreparable harm, it would have sought immediate relief; it would not have waited six weeks until the eve of a holiday weekend. *Citibank*, 756 F.2d at 277 (finding plaintiff failed to establish irreparable harm where it delayed seeking injunctive relief).

## III.    THE EQUITIES DO NOT FAVOR INJUNCTIVE RELIEF

MMA makes the audacious demand that this Court enter a temporary restraining order ***legally precluding non-party customers from working with Alliant***, presumably in the hopes that if this Court forces Alliant to terminate its relationship with these companies, they will have no choice but to return to MMA against their will. To state the obvious, forcing Alliant to terminate its relationship with clients who have voluntarily transitioned their business to Alliant and plainly have no desire to return to MMA is a disturbance of the status quo. And the consequences of this disruptive relief—while obviously damaging to Alliant—would also fall heavily on those non-parties. *See Barbagallo*, 925 F. Supp. 2d at 295 ("In professional matters, sensible clients follow the talent they trust, and not the organizations to which that talent is temporarily attached. Clients

are not dragged against their will from one firm to another, but actively choose who they will retain for professional services."). *See also* Del Vecchio Decl. ¶ 7; Martin Decl. ¶ 2.

Broker appointments are not for a set period of time. Clients may appoint or change brokers at will. The Court should not grant relief that would deprive these non-party clients of the right to choose their own brokers and act in their own self-interest. *Id.* This is particularly true where, as here, MMA seeks to disrupt Alliant's relationship with clients that already transitioned their business to Alliant:

> An injunction preventing any entity within the [defendant's] corporate structure from servicing or soliciting its existing clients would be a mandatory injunction that alters the status quo. Not only would such an injunction require a heightened showing of entitlement to relief [citation omitted], but the harm it would inflict on [defendant's] clients must be balanced against its necessity [….] There is no justification for enjoining the Individual Defendants or any of the [defendant] entities from servicing or soliciting clients who have already chosen to retain their services.

*Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 355 (S.D.N.Y. 2018).

Other courts have similarly articulated the inequities that would be visited by issuing an injunction that prevents non-party clients from doing business with the firm of their own choosing. *See, e.g.*, *Buchanan Capital Mkts., LLC v. DeLucca*, 144 A.D.3d 508, 509 (1st Dep't 2016) ("Plaintiff further failed to show that the balance of the equities weighed in its favor. The preliminary injunction that it sought would have changed the status quo. Unless plaintiff's predecessor's clients signed agreements to use plaintiff's predecessor for a set period of time— and there is no indication in the record that they did—the clients should be free to pick the firm they want, be it plaintiff or defendants' new firm."); *Kanan, Corbin, Schupak & Aronow, Inc. v FD Intl., Ltd.*, 8 Misc.3d 412, 422 (Sup. Ct. 2005) ("An injunction will not serve to retrieve these lost clients, and the court cannot compel these clients to return to [the plaintiff]," "an injunction will not serve to prevent [current clients] from exercising their own preference by moving

elsewhere"); *Aon Risk Servs. Co. v. Alliant*, 415 F. Supp. 3d 843, 852-53 (N.D. Ill. 2019) ("Alliant has a point" that it would be contrary to the public interest to deny "clients their free choice of who to work with"); *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 716 (N.D. Ill. 2009) (proposed injunction "would be unjust to the customers, both because they chose to conduct business with [defendants' new firm] and because they would then likely be forced to go back to a [] services provider ([plaintiff]) with whom their relationship may now be precarious"); *Corporate Technologies, Inc. v. Harnett*, 943 F. Supp. 2d 233, 245-46 (D. Mass. 2013) ("There is a strong public policy interest in allowing third parties, not bound by the restrictive covenant, to make unencumbered decisions regarding those individuals and entities with whom they would like to do business.").

## IV.    NO INJUNCTION CAN OR SHOULD ISSUE AS TO ALLIANT

Alliant is not party to *any* restrictive covenants with MMA. Yet, in an anti-competitive stretch, MMA is seeking to have this Court bind Alliant—one of MMA's major competitors in the insurance brokerage marketplace—to the restrictive covenants in the MMA Employment Agreements. The effect of this would be to preclude Alliant's *thousands* of employees nationwide from competing with MMA for *hundreds* of potential clients, based solely on the fact that Alliant hired *one* producer and three support staff subject to restrictive covenants. Such a restriction, untethered from the Individual Defendants' involvement, would stifle the free market and serve no purpose other than to exempt MMA from fair competition. Moreover, such a restriction risks rendering current MMA employees "poison pills" that no competitor would be willing to hire. No insurance brokerage would extend a job offer to one of MMA's employees if the consequence

were that the *entire brokerage* would become bound by that employee's restrictive covenants and be precluded from doing business with MMA's clients.

## V.    MMA HAS NOT MET ITS BURDEN FOR EXPEDITED DISCOVERY

Courts in the Second Circuit apply one of two standards when considering requests for expedited discovery. *New York by Schneiderman v. Griepp*, No. 17-CV-3706-CBA, 2017 WL 3129764, at *1 (E.D.N.Y. July 20, 2017).  Under *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), courts use a strict standard for expedited discovery: the plaintiff must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."  Alternatively, there is a "reasonableness and good cause test."  *Griepp*, 2017 WL 3129764, at *1. Regardless of the standard, the burden is on the movant. *See id.*

Here, MMA does not even proffer an argument justifying its request for expedited discovery. Accordingly, MMA's empty request for expedited discovery should be denied.

## CONCLUSION

For the foregoing reasons, MMA's application for a temporary restraining order, a preliminary injunction, and expedited discovery should be denied.


Dated: September 5, 2025
      New York, New York

                    Respectfully submitted,


                    */s/ Timothy J. Stephens*

                    Timothy J. Stephens
                    Peter M. Fay
                    MORGAN, LEWIS & BOCKIUS LLP
                    101 Park Avenue
                    New York, NY 10178
                    (212) 309-6000
                    timothy.stephens@morganlewis.com
                    peter.fay@morganlewis.com

                    *Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that Defendants' Memorandum of Law in Opposition to Plaintiff's Application For a Temporary Restraining Order, a Preliminary Injunction, and Expedited Discovery complies with the 8,750-word limit set forth in Local Civil Rule 7.1 and in Judge Abrams's Individual Rules & Practices in Civil Cases § 4.A. Based on Microsoft Word's word-count function, this document totals 8,610 words, exclusive of the caption, tables of contents and authorities, signature block, and certificate, but is inclusive of footnotes.

Dated: September 5, 2025

*/s/ Timothy J. Stephens*