**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARSH & McLENNAN AGENCY LLC, | Case No.: 25-cv-06936 |
| Plaintiff, | |
| v. | |
| ALLIANT INSURANCE SERVICES, INC., ANDREW OLDENBURG, ELIZABETH McKINNEY, KIMBERLY MOORE, and DANIELLE BLACK, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
ALLIANT INSURANCE SERVICES, INC.'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

    A.  MMA Acquires PayneWest and Enters Into Restrictive Covenant
        Agreements to Protect the Goodwill it Purchased..................................................... 2

    B.  Alliant Knew That the Individual Defendants Had Agreed to New York
        Forum Selection Clauses in the Contracts Alliant Induced Them to Breach ...................... 3

    C.  Alliant Intentionally Induced the Breaches That Give Rise to This Case ........................... 7

    D.  This Litigation Arises from Alliant's Knowing, Forum-Directed
        Misconduct ................................................................................................. 8

ARGUMENT ...........................................................................................................................8

ALLIANT IS SUBJECT TO THIS COURT'S JURISDICTION ...................................................8

    A.  Alliant Cannot Avoid Jurisdiction Here for the Resulting Litigation Over
        the Breaches It Chose to Induce ...................................................................... 9

    B.  This Court Has Jurisdiction Over Alliant Under New York's Long-Arm
        Statute ...................................................................................................... 14

          1.    Section 302(a)(1) ............................................................................... 15

          2.    Section 302(a)(3) ............................................................................... 16

          3.    Due Process Allows Jurisdiction Here .................................................. 18

CONCLUSION .......................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
  585 F.3d 696 (2d Cir. 2009)................................................................9, 12

*Astro-Med, Inc. v. Nihon Kohden Am., Inc.*,
  591 F.3d 1 (1st Cir. 2009) ..............................................................9

*Avanti Sys. USA, LLC v. Sanchez*,
  2025 WL 2773306 (S.D.N.Y. Sept. 26, 2025)..............................1, 13

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007)...........................................................15

*BGC Partners Inc. v. Avison Young (Canada) Inc.*,
  46 Misc. 3d 1202(A) (N.Y. Sup. Ct. N.Y. Cnty. 2014) ................17

*Cleopatra Kohlique, Inc. v. New High Glass, Inc.*,
  652 F. Supp. 1254 (E.D.N.Y. 1987) ..............................................17

*Cognizant Tech. Sols. Corp. v. Bohrer PLLC*,
  2022 WL 1720319 (S.D.N.Y. May 27, 2022) ................................10

*Cont'l Indus. Grp., Inc. v. Altunkilic*,
  2016 WL 11796844 (S.D.N.Y. Apr. 6, 2016)...................................16

*Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*,
  568 F. Supp. 2d 329 (S.D.N.Y. 2008)..............................................17

*Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*,
  7 N.Y.3d 65 (2006) ..........................................................................18

*Energy Brands Inc. v. Spiritual Brands Inc.*,
  571 F. Supp. 2d 458 (S.D.N.Y. 2008)..............................................18

*Fasano v. Li*,
  47 F.4th 91 (2d Cir. 2022) .................................................9, 10, 11, 12

*Fischbarg v. Doucet*,
  9 N.Y.3d 375 (2007) .........................................................................15

*Franlink Inc. v. BACE Servs., Inc.*,
  50 F.4th 432 (5th Cir. 2022) ...........................................................9

*Glob. Gaming Philippines, LLC v. Razon,*
2023 WL 5935640 (S.D.N.Y. Sept. 12, 2023) .......................................................................18

*Henderson v. I.N.S.,*
157 F.3d 106 (2d Cir. 1998) ...............................................................................................15

*Hugel v. Corp. of Lloyd's,*
999 F.2d 206 (7th Cir. 1993) .................................................................................................9

*International Shoe Co. v. State of Washington,*
326 U.S. 310 (1945) .............................................................................................................18

*Jewell v. Music Lifeboat,*
254 F. Supp. 3d 410 (E.D.N.Y. 2017) ...............................................................................16

*LaChapelle v. Torres,*
1 F. Supp. 3d 163 (S.D.N.Y. 2014) ....................................................................................16

*LaMarca v. Pak–Mor Mfg. Co.,*
735 N.E.2d 883 (N.Y. 2000) ..............................................................................................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
673 F.3d 50 (2d Cir. 2012) .................................................................................................18

*Lipcon v. Underwriters at Lloyd's, London,*
148 F.3d 1285 (11th Cir. 1998) ............................................................................................9

*Lockton Companies, LLC – Pacific Series v. Alliant Insurance Services, Inc.,*
2024 WL 5265394 (W.D. Mo. Jan. 19, 2024) ..........................................................10, 13, 14

*Lockton Cos., LLC v. Kaufman,*
2024 WL 2289992 (W.D. Mo. May 6, 2024) ........................................................................6

*Magi XXI, Inc. v. Stato della Città del Vaticano,*
714 F.3d 714 (2d Cir. 2013) .........................................................2, 9, 10, 11, 12, 13

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
858 F.2d 509 (9th Cir. 1988) ................................................................................................9

*Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.,*
2025 WL 304500 (S.D.N.Y. Jan. 27, 2025) ......................................................................4, 9

*Marsh & McLennan Agency LLC v. Alliant Insurance Services, Inc.,*
2025 WL 29166153 (S.D.N.Y. Oct. 14, 2025) ...................................................................12

*In re McGraw-Hill Glob. Educ. Holdings LLC,*
909 F.3d 48 (3d Cir. 2018) ...................................................................................................9

*Medtronic, Inc. v. Endologix, Inc.*,
  530 F. Supp. 2d 1054 (D. Minn. 2008) ................................................................. 14

*Mountain West Series of Lockton Cos. v. Alliant Ins. Servs., Inc.*,
  2019 WL 2536104 (Del. Ch. June 20, 2019) ............................................................. 6

*Oldenburg v. Marsh & McLennan Agency LLC*,
  2025 WL 2829802 (D. Or. Oct. 6, 2025) ............................................................. 6, 7

*Parke–Bernet Galleries v. Franklyn*,
  308 N.Y.S.2d 337 (1970) ................................................................................. 16

*Paterno v. Laser Spine Inst.*,
  24 N.Y.3d 370 (2014) ..................................................................................... 15

*Pincione v. D'Alfonso*,
  506 F. App'x 22 (2d Cir. 2012) ......................................................................... 16

*RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*,
  2024 WL 1574026 (S.D.N.Y. Apr. 11, 2024) ........................................................... 11

*Seagrape Investments LLC v. Tuzman*,
  2024 WL 4337448 (S.D.N.Y. Sept. 26, 2024) ................................................ 1, 2, 8, 11, 12

*State v. Vayu, Inc.*,
  39 N.Y.3d 330 (2023) ..................................................................................... 15

*Symmetra Pty Ltd. v. Human Facets, LLC*,
  2013 WL 2896876 (S.D.N.Y. June 13, 2013) ........................................................... 19

*Transient Path, LLC v. Stones S. Bay Corp.*,
  2024 WL 3730113 (S.D.N.Y. Aug. 8, 2024) ............................................................ 13

*Weingrad v. Telepathy, Inc.*,
  2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) ............................................................ 11

**Other Authorities**

CPLR §302(a)(1) ....................................................................................... 15, 16

CPLR §302(a)(3) ....................................................................................... 16, 17

## PRELIMINARY STATEMENT

As the Court knows from the briefing and oral argument on MMA's motion for a temporary restraining order and preliminary injunction, this case arises from Alliant's latest raid on MMA's business and from its now familiar effort to evade responsibility by contesting jurisdiction in the very forum that its recruits agreed to in their contracts—the contracts that Alliant directed them to breach. The issues raised by Alliant's motion to dismiss—already addressed to some extent—are whether (1) a company that knowingly induces breaches of New York–governed contracts containing mandatory New York forum clauses can escape jurisdiction here in litigation over its intentional interference with those contracts, and (2) apart from those clauses, Alliant's forum-directed misconduct—culminating in the wrongful diversion of a New York client—subjects it to New York's long-arm jurisdiction. As MMA has stated in its earlier briefing and argument, the record and the law do not allow Alliant to escape the consequence of its tortious actions.

As set forth in the prior briefing, the contracts at issue require that disputes be litigated in New York. MMA therefore must sue the individual defendants here to establish the validity, enforceability, and breach of those contracts. Its tortious interference claim against Alliant depends on those same predicates. Yet Alliant insists that it can only be sued elsewhere. The result would be duplicative litigation—first in New York against the individuals, and later, in another jurisdiction, against Alliant for procuring those breaches. That fragmentation is exactly what the closely-related-parties doctrine forbids. As this Court held in *Seagrape Investments LLC v. Tuzman*, 2024 WL 4337448, at *6–7 (S.D.N.Y. Sept. 26, 2024) (Abrams, J.), and Judge Karas recently reaffirmed in *Avanti Sys. USA, LLC v. Sanchez*, 2025 WL 2773306, at *9 (S.D.N.Y. Sept. 26, 2025), when a tortious interference claim cannot be resolved without interpreting the underlying contract and determining whether it was breached, the non-signatory accused of orchestrating the breach is bound by the same forum clause in the contract with which it knowingly

chose to interfere. Otherwise, a company like Alliant could deliberately induce breaches of New York contracts while ensuring that no single court could adjudicate—much less enjoin—its misconduct. The closely-related-parties doctrine exists precisely to foreclose the use of such "evasive and formalistic means…to escape" accountability. *Seagrape*, 2024 WL 4337448, at *6 (quoting *Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013)). That principle alone defeats Alliant's motion.

But even apart from the closely-related-parties doctrine, New York's long-arm statute independently reaches Alliant's conduct. Alliant purposefully directed its activities toward this forum by inducing breaches of New York-governed contracts and consummating those breaches through the diversion and servicing of a New York client. Having deliberately reached into New York commerce and caused injury here, Alliant cannot feign surprise at being haled into a New York court. MMA kept its side of the bargain when it paid for PayneWest's goodwill and secured promises to protect it. Now, Alliant, knowing full well that the parties agreed that New York is the forum to which everyone agreed—argues that this Court has no power to hear the dispute. The facts, the closely-related-parties doctrine, and basic fairness point the other way.

For the reasons set forth herein, in addition to those advanced in the earlier briefing and argument on the application for injunctive relief, the Court should deny Alliant's motion to dismiss and hold it to the forum it knowingly invaded and the promises it knowingly subverted.

## STATEMENT OF FACTS

### A.    MMA Acquires PayneWest and Enters Into Restrictive Covenant Agreements to Protect the Goodwill it Purchased

MMA acquired PayneWest Insurance in 2021, purchasing its goodwill, client relationships, and the ownership interests of its shareholders, including Oldenburg. (Compl. ¶¶30–34; ECF No. 17, ¶¶8–14). As a condition of that sale, Oldenburg executed an Acknowledgment and Restrictive

Covenant Agreement (the "RCA") containing five-year non-solicitation covenants and providing that any litigation arising from a breach would be governed by New York law and heard exclusively in the courts of New York County or the United States District Court for the Southern District of New York. (Compl. ¶¶34–45; ECF No. 17, ¶¶15–16; ECF No. 17-1, §§3, 10(c)). In connection with the same transaction, Oldenburg and his client-service team—Elizabeth McKinney, Kimberly Moore, and Danielle Black—each executed Non-Solicitation and Confidentiality Agreement (the "NSAs"), likewise governed by New York law and containing identical mandatory New York forum selection clauses. (Compl. ¶¶46–56; ECF No. 17, ¶¶17–18; ECF No. 17-2, §15; ECF No. 17-3, §15; ECF No. 17-4, §15; ECF No. 17-5, §15).

### B. Alliant Knew That the Individual Defendants Had Agreed to New York Forum Selection Clauses in the Contracts Alliant Induced Them to Breach

Restrictive covenants of this kind are standard in the insurance brokerage industry, and Alliant knows it. (Compl. ¶76). Alliant requires its own employees to sign them and knows that its competitors do the same. (*Id*. at ¶¶70–71, 76). In fact, over the past decade, Alliant has been sued more than seventy times for inducing employees to breach restrictive-covenant agreements with their former employers. (*Id*. at ¶¶70).

That history has given Alliant deep familiarity with the very agreements at issue here. In a recent federal case involving a producer Alliant recruited from another competing brokerage, Alliant's outside counsel—the same firm representing Alliant in this action—told another federal court that he was "very familiar…with the status of the [brokerage] industry" as it relates to restrictive covenants generally, and with "Marsh['s]" restrictive covenant agreements in particular. *See Acrisure of Cal., LLC v. Bedrosian*, No. 1:25-cv-00586 (W.D. Mich. June 16, 2025) (Hr'g Tr. 38:18–22), attached as Ex. A to the Declaration of A. Millie Warner in Opp'n to Def. Alliant Ins. Servs., Inc.'s Mot. to Dismiss ("Warner Decl.").

Indeed, Alliant has ample reason to be familiar with the Marsh entities' restrictive covenant agreements. Marsh businesses, including MMA, have sued Alliant repeatedly for inducing former employees to violate their restrictive covenant agreements—all in New York courts, pursuant to the mandatory New York forum-selection clauses that appear in Marsh restrictive-covenant agreements. Those clauses reflect the Marsh entities' New York headquarters and their consistent selection of New York law and venue.

On December 23, 2024, MMA filed suit in this Court against Alliant and former producer Johnny Osborne, who had been employed in Alabama and bound by the same MMA Non-Solicitation and Confidentiality Agreement that binds Oldenburg and the other individual defendants here. *Marsh & McLennan Agency LLC v. Alliant Insurance Services, Inc., Johnny Osborne, et al.*, No. 24-cv-10843 (S.D.N.Y. Dec. 23, 2024). Alliant did not contest jurisdiction in that case. One month later, Judge Vyskocil granted MMA a preliminary injunction, enjoining Alliant, Osborne and the client service team he brought with him from further solicitation of MMA clients and from servicing the MMA clients they had wrongfully already converted to Alliant. *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc*., 2025 WL 304500 (S.D.N.Y. Jan. 27, 2025).

On February 14, 2025, MMA again sued Alliant in this District, this time over its recruitment of another former PayneWest producer, Travis Davis, who was bound by the same RCA and NSA at issue here. *Marsh & McLennan Agency LLC v. Alliant Insurance Services, Inc., Travis Davis, et al.*, No. 25-cv-01260 (S.D.N.Y. Feb. 14, 2025). And on July 1, 2025, Marsh USA LLC filed suit in this Court against Alliant and two former Marsh executives, Glenn Pelletiere and Colin Horgan, alleging the same coordinated "team-lift" strategy. *Marsh USA LLC v. Alliant Insurance Services, Inc., et al.*, No. 25-cv-05470 (S.D.N.Y. July 1, 2025).

By the time Alliant turned to Oldenburg later in July, its familiarity with MMA's restrictive-covenant agreements—and their New York forum clauses—was beyond question. But Alliant did not need to rely on general industry knowledge—or even on its familiarity with MMA's restrictive-covenant agreements from past litigation—to know that Oldenburg was bound by the RCA and NSA. Alliant's standard recruiting protocol requires candidates to provide copies of any existing restrictive-covenant agreements so that its legal department can review them before hire—a practice its corporate representative has confirmed under oath. (Compl. ¶77). Oldenburg's NSA, for its part, required him to provide a copy to any prospective employer. (Compl. ¶77; ECF No. 17-2, §19; *see also* ECF No. 17-3, §19; ECF No. 17-4, §19; ECF No. 17-5, §19). There is no reason to believe Alliant departed from that standard practice here. At no point has Alliant denied that it was aware of Oldenburg's contracts with MMA and their New York forum-selection clauses when it decided to hire him—not in its opposition to MMA's motion for injunctive relief, not at the preliminary-injunction hearing, and not in this motion to dismiss.

To the contrary, Alliant has admitted that it knew about those agreements. Alliant executive Jeff O'Neill declared under oath that he instructed Oldenburg not to solicit clients and, if any clients approached him, to tell them that "he had an agreement and he could not solicit their business." (ECF No. 29, ¶11). That acknowledgment confirms that Alliant knew of Oldenburg's contracts, understood their restrictions, and structured its handoff plan around them.

Alliant's coordination with Oldenburg went further. On July 14, 2025—the very day Oldenburg resigned from MMA "effective immediately" and simultaneously began work at Alliant—he filed a declaratory-judgment action in Oregon seeking to invalidate the restrictive covenants in his RCA and NSA. (Compl. ¶97; *Oldenburg v. Marsh & McLennan Agency LLC*, No. 25CV40606 (Or. Cir. Ct. Multnomah Cty. July 14, 2025). That same-day filing was no

accident: as courts have recognized in other Alliant matters, orchestrating simultaneous resignations and declaratory-judgment filings in supposedly more favorable jurisdictions is a hallmark of Alliant's recruiting playbook.[1] (Compl. ¶99). While licking its wounds from the outcome of the *Osborne* case, Alliant sought to evade the same fate here. On information and belief, Alliant planned the Oregon filing in advance, furnished Oldenburg with legal counsel, and paid for it. (*Id.* at ¶98). The lawsuit could not have been drafted or filed without Alliant's involvement; it was based entirely on the restrictive-covenant agreements that Alliant possessed and reviewed.

MMA removed the Oregon case to federal court and moved to transfer it to this District under the New York forum-selection clauses. *Oldenburg v. Marsh & McLennan Agency LLC*, No. 3:25-cv-01459-AB, ECF No. 7 (D. Or. Aug. 22, 2025). At no point in opposing that motion did Oldenburg claim that he was unaware of those clauses. *See Oldenburg*, No. 3:25-cv-01459-YY, ECF No. 12 (D. Or. Sept. 5, 2025). Instead, he argued—unsuccessfully—that the clauses were unenforceable. *Id.* The Oregon federal court rejected that argument, holding that the forum-selection clauses are valid and enforceable and that the case belongs in New York. *Oldenburg v. Marsh & McLennan Agency LLC*, 2025 WL 2829802, (D. Or. Oct. 6, 2025). In transferring the

---

[1] Alliant's use of simultaneous resignations and declaratory-judgment filings is no anomaly. Courts across jurisdictions have repeatedly identified the same maneuver as part of Alliant's recruitment playbook. In *Mountain West Series of Lockton Cos. v. Alliant Ins. Servs., Inc.*, 2019 WL 2536104 (Del. Ch. June 20, 2019), Alliant coordinated the filing of a declaratory judgment action in Colorado "on the same day that [its recruits] resigned"—despite Missouri forum-selection clauses in their agreements. *Id.* at *8. That action was "dismissed on the basis of the forum selection clauses," *id.*, and the Delaware Chancery Court later found that Alliant "never really believed" its position that Colorado law applied, but pursued it anyway "in three courts." *Id.* at *10 n.6. The record—including memoranda prepared by Alliant's counsel, now public following a privilege waiver and a finding that they fell within the "crime/fraud exception"—confirmed that Alliant knew Colorado was an improper forum and caused its recruits to fil there solely to delay enforcement while poaching clients. *Id.*; *see also* ECF No. 42-2; ECF No. 42-3. Even after that judicial rebuke, Alliant has continued the same practice with new recruits subject to mandatory forum selection clauses—including, remarkably, against Lockton itself. *See, e.g.*, *Lockton Cos., LLC v. Kaufman*, 2024 WL 2289992, at *3 (W.D. Mo. May 6, 2024) (holding Alliant recruit breached contract by filing declaratory action in California despite Missouri forum clause).

case, the court specifically found that Oldenburg was an "experienced insurance broker" and that the clauses were "obvious and written in plain language." *Id.* at *1.

### C.    Alliant Intentionally Induced the Breaches That Give Rise to This Case

Despite its knowledge of MMA's agreements, Alliant proceeded to recruit Oldenburg and his entire team to replicate the same scheme. It offered them above-market compensation packages that made financial sense only if Oldenburg brought his MMA clients with him in breach of his covenants. (Compl. ¶¶80–87; *see also* ECF No. 17, ¶19). At Alliant's direction, Oldenburg identified McKinney, Moore, and Black as the employees critical to servicing his MMA book, and Alliant hired all three on the very day he resigned—ensuring continuity for the clients Alliant expected to obtain. (Compl. ¶¶83–86; ECF No. 17, ¶24; ECF No. 37 ¶¶5–7; ECF No. 37-2; ECF No. 37-3; ECF No. 37-4; ECF No. 30, ¶¶3, 6; ECF No. 31, ¶¶3, 6; ECF No. 32, ¶¶3, 6). Oldenburg, while still on MMA's payroll, secretly solicited clients and, at Alliant's direction, scheduled his resignation to occur in the early morning hours of Monday, July 14, 2025, with his team's resignations to occur the same day, following Alliant's well-documented "Monday-morning raid" playbook. (Compl. ¶¶88–97; ECF No. 17, ¶¶20–24; ECF No. 17-6; ECF No. 42-4 at ALLIANT00087479). Immediately upon their coordinated departures, Oldenburg filed a declaratory-judgment action in Oregon—funded and directed by Alliant—seeking to invalidate the very New York contracts Alliant had induced him to breach. (Compl. ¶¶97–98).

The results followed Alliant's design. Within twenty-four hours of Oldenburg's resignation, a long-standing MMA client emailed a senior Alliant executive with the subject line "Andy O Transition," stating: "Jeff, I'm reaching out to transition our accounts to Alliant." (Compl. ¶102; ECF No. 17, ¶25; ECF No. 17-7). That email—sent to Alliant rather than any general inbox and mistakenly copying Oldenburg's MMA address—reveals that the hand-off had been pre-arranged while Oldenburg was still employed at MMA. In the ensuing weeks, at least

fourteen more MMA clients representing more than $600,000 in annual revenue transitioned to Alliant. (Compl. ¶109; ECF No. 17, ¶26). One of those clients was a public-private fund established under New York law and sponsored by the Governor and Legislature—a paradigmatic New York client relationship. (Compl. ¶23; ECF No. 17, ¶26; Warner Decl. Ex. B (Tr. 32:6–14)). Alliant is now servicing that account. (Compl. ¶¶23, 110–12).

**D.    This Litigation Arises from Alliant's Knowing, Forum-Directed Misconduct**

MMA's claims stem directly from Alliant's intentional inducement of breaches of contracts that Alliant knew (1) were governed by New York law, (2) contained mandatory New York forum clauses, and (3) protected client relationships, including a New York client. (Compl. ¶¶23–25, 166–176). Alliant's inducement of those breaches and its servicing of the New York client constitute tortious acts causing injury within this forum. Alliant cannot now disclaim jurisdiction in the same forum its recruits promised to litigate in and whose protection Alliant deliberately subverted.

## ARGUMENT

## ALLIANT IS SUBJECT TO THIS COURT'S JURISDICTION

Alliant's motion fails for two reasons. *First*, Alliant is bound by the New York forum-selection clauses under the Second Circuit's "closely related" doctrine—as this Court recently reaffirmed in *Seagrape Investments LLC v. Tuzman*, 2024 WL 4337448, at *6–7 (S.D.N.Y. Sept. 26, 2024) (Abrams, J.). *Second*, apart from those clauses, the Court has specific jurisdiction under New York's long-arm statute because Defendants' scheme targeted, and succeeded in moving, a New York client—conduct that squarely ties Alliant to this forum.

### A.     Alliant Cannot Avoid Jurisdiction Here for the Resulting Litigation Over the Breaches It Chose to Induce

Having effectively conceded that the individual defendants breached their restrictive covenant agreements with MMA at Alliant's direction[2]—and that Alliant knew of those agreements and their mandatory New York forum clauses before inducing those breaches—Alliant now bids to avoid the same result it suffered earlier this year when Judge Vyskocil entered a preliminary injunction against it for the same misconduct under the same contracts. *See Marsh & McLennan Agency, LLC v. Alliant Ins. Servs., Inc.*, 2025 WL 304500 (S.D.N.Y. Jan. 27, 2025). It insists—despite knowingly orchestrating and profiting from violations of New York-governed contracts that designate the courts of New York as the exclusive fora for disputes arising from those contracts—that it somehow cannot be sued here consistent with due process. (ECF No. 49 at 10–11). That argument defies both law and logic—and this Court has already rejected Alliant's position outright in a prior case.

The Second Circuit has long recognized the closely-related-parties doctrine, which binds a non-signatory to a forum-selection clause when its relationship to the contract or dispute makes enforcement foreseeable, precisely to prevent "evasive and formalistic means…to escape contractual obligations." *Magi*, 714 F.3d at 722.[3] Alliant tries to cabin the Second Circuit's recognition of the closely-related-parties doctrine to when a non-signatory is "closely related to a party"—such as when a non-signatory is a successor in interest or the source of a signatory's authority to enter the contract—and insists it does not apply when the non-signatory is closely

---

[2] *See* ECF No. 39 at 1–2, 14–20.

[3] Notably, every federal circuit to have considered the question has adopted the closely-related-parties doctrine. *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 9–10 (1st Cir. 2009); *Fasano v. Li*, 47 F.4th 91, 103 (2d Cir. 2022); *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009); *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 63 (3d Cir. 2018); *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 441–43 (5th Cir. 2022); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209–10 (7th Cir. 1993); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998).

related "to the dispute" itself.[4] (ECF No. 49 at 10). That is not the law. First, the Second Circuit

has made clear that "we have permitted non–signatories to an agreement to be bound by, and to

enforce, forum selection clauses where, under the circumstances, the non–signatories enjoyed a

sufficiently close nexus *to the dispute* or to another signatory such that it was foreseeable that they

would be bound." *Fasano v. Li*, 47 F.4th 91, 103 (2d Cir. 2022) (emphasis added). In addition, far

from limiting the doctrine to the particular factual settings—such as successorship or agency—

that happened to appear in earlier cases, the Second Circuit has declined to adopt *any* restrictive

formulation of when a signatory may enforce a forum-selection clause against a non-signatory,

explaining recently that "[t]o date, this Court has declined to adopt a standard governing precisely

'when a signatory may enforce a forum-selection clause against a non-signatory.'" *Fasano*, 47

F.4th at 103 (quoting *Magi*, 714 F.3d at 723 n.10); *see also Cognizant Tech. Sols. Corp. v. Bohrer

PLLC*, 2022 WL 1720319, at *4 (S.D.N.Y. May 27, 2022) (Abrams, J.) ("The Second Circuit has

disavowed '[a] literal approach to interpreting forum selection clauses' and instead recognizes that

'a range of transaction participants, parties and nonparties, should benefit from and be subject to

forum selection clauses.'") (quoting *Magi*, 714 F.3d at 722). Instead, the Second Circuit has

identified "several circumstances that could trigger" application of the doctrine, including when

---

[4] Even if the inquiry were limited to Alliant's relationship with the signatories—rather than its relationship to the dispute—jurisdiction would still be proper. In *Lockton Companies, LLC – Pacific Series v. Alliant Insurance Services, Inc.*, the court found that jurisdiction over Alliant was proper under the "closely related" doctrine not only because Alliant was closely related to the dispute, but also because it was "closely related" to the individual defendants who had signed the contracts containing the forum-selection clause, as "Alliant ha[d] a continued interest in employing [them] and their right to solicit former Lockton customers." 2024 WL 5265394, at *3 (W.D. Mo. Jan. 19, 2024). Indeed, the court noted that Alliant's interests were so aligned with the individual defendants that they even "share[d] the same legal counsel." *Id.* The same court recently reaffirmed that holding at summary judgment, again emphasizing not only Alliant's close relationship to the dispute, but also to the individual defendants were signatories to the contracts, noting that Alliant's interests were "so closely aligned" with the individual defendants that they even "share[d] the same counsel." *Lockton*, No. 23-cv-00705-SRB, ECF No. 281, Order, at 7 (W.D. Mo. Sept. 23, 2025), attached as Ex. C to the Warner Decl. The same alignment of interests exists here. Alliant continues to employ each of the individual defendants and plainly has an ongoing stake in their ability to solicit and service MMA clients—the very purpose for which Alliant recruited them. And, as in *Lockton*, Alliant and the individual defendants are represented by the same counsel in this case.

> (1) the non-signatories were "closely related" to the signatory; (2) the non-signatories "had interests in the litigation that were directly related to, if not predicated upon those of the signatories"; and (3) the claims against the non-signatories were "integrally related" to the claims against the signatories.

*RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 2024 WL 1574026, at *4 (S.D.N.Y. Apr. 11, 2024) (Rochon, J.) (quoting *Fasano*, 47 F.4th at 103). Thus, the doctrine does not depend on corporate succession or agency alone, but on the foreseeability that a non-signatory so entwined with a contractual dispute would be bound by the chosen forum—precisely the situation here, where Alliant's interference with the contracts is the gravamen of the case.

That principle reaches its clearest expression in cases like this one, where the tort claim is integrally related to the very contracts containing the forum clause. As the Second Circuit held in *Magi*, a forum-selection clause "covers tort claims against non-signatories if the tort claims ultimately depend on the existence of a contractual relationship between the signatory parties." 714 F.3d at 724. A tortious-interference claim is precisely that kind of claim: it presupposes valid contracts and alleges their breach at the non-signatory's inducement. Where the alleged tort could not exist but for the contracts, the non-signatory's connection to the forum clause is direct and foreseeable. *See, e.g.*, *Weingrad v. Telepathy, Inc.*, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005).

Not only is Alliant's narrow view of the doctrine contrary to the Second Circuit's articulation of it, but it cannot be reconciled with how this Court has already applied the closely-related-parties doctrine. In *Seagrape Investments LLC v. Tuzman*, 2024 WL 4337448 (S.D.N.Y. Sept. 26, 2024) (Abrams, J.), this Court rejected the very argument Alliant makes here, holding that non-signatories who "acted in concert with signatories while aware of the contract's terms" by "induc[ing]" and "intentionally procur[ing]" breaches of the contract containing a forum-

selection clause are thereby bound to litigate their tortious interference with that contract in the forum selected by the contract whose breach they chose to induce. *Id.* at *7. As this Court emphasized, the doctrine exists to prevent parties from using "evasive, formalistic means … to escape contractual obligations." *Id.* (quoting *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009)).

That reasoning controls this case. Alliant knowingly induced breaches of New York–governed restrictive-covenant agreements containing mandatory New York forum clauses. Like the non-signatories in *Seagrape*, Alliant did not merely benefit from those breaches—it directed and orchestrated them, instructing its recruits when and how to violate their covenants and coordinating client transitions in advance. In doing so, Alliant "acted in concert with signatories while aware of the contract's terms," *id.*, placing itself squarely within the scope of *Seagrape*'s holding. Because MMA's tortious-interference claim arises from and depends upon those very contracts, the same forum clause that governs the signatories binds the tortfeasor who made procuring those breaches its business plan. To hold otherwise would be irreconcilable with *Seagrape* and would reward the kind of "evasive, formalistic conduct" that *Magi* and this Court have condemned—and that defines Alliant's business model.

Yet Alliant ignores *Seagrape* entirely, relying instead on Judge Vargas's opinion in *Marsh & McLennan Agency LLC v. Alliant Insurance Services, Inc.* ("*Davis*"), 2025 WL 29166153 (S.D.N.Y. Oct. 14, 2025), which disagreed with *Seagrape*. *Id.* at *7. *Davis* misread *Magi*, *Fasano*, and *Aguas Lenders* in drawing a distinction between foreseeability for venue and for jurisdiction—a distinction the Second Circuit has never recognized—and holding that the closely-related-parties doctrine cannot confer personal jurisdiction. This Court should decline to adopt that view, which cannot be squared with its own reasoning in *Seagrape* or with the conclusions of other judges in

12

this District. *See Avanti Sys. USA, LLC v. Sanchez*, 2025 WL 2773306, at 9 (S.D.N.Y. Sept. 26, 2025) (Karas, J.) (holding that the "closely related" doctrine conferred personal jurisdiction over a non-signatory who allegedly tortiously interfered with a restrictive-covenant agreement, explaining that "[t]his claim cannot be resolved without analysis of the underlying contractual agreements…and therefore the Court may exercise personal jurisdiction…pursuant to the rule articulated in *Magi*," and citing with approval *Seagrape*, 2024 WL 4337448, at *6)[5]; *Transient Path, LLC v. Stones S. Bay Corp.*, 2024 WL 3730113, at *8 (S.D.N.Y. Aug. 8, 2024) (Preska, J.) (holding that where a non-signatory "acted in concert with" signatories to harm the plaintiff, "it [was] entirely foreseeable that [the non-signatory] would be bound by the forum-selection clause" and "had therefore consented to the jurisdiction of this Court").

Other courts outside this Circuit confronted with this same argument by Alliant—arising from the same pattern of hiring competitors' employees bound by forum-selection clauses—have rejected it. In *Lockton Companies, LLC – Pacific Series v. Alliant Insurance Services, Inc.*, 2024 WL 5265394 (W.D. Mo. Jan. 19, 2024), a Missouri federal court applied the closely-related doctrine and held Alliant subject to jurisdiction under a forum-selection clause in its recruits' employment agreements. The court explained that Alliant was "closely related to the dispute" because it hired the employees "while fully aware of the employment agreements and, hence, the forum-selection clauses," and that their subsequent solicitation of clients for Alliant "gave rise to

---

[5] Judge Karas's decision in *Avanti* further underscores that the closely-related-parties doctrine turns on whether the plaintiff's claim *depends on* the contract containing the forum clause. There, the court declined to apply the doctrine to a non-signatory accused only of trade-secret misappropriation, because that claim was "independent of the [restrictive covenant agreement] and does not depend on its existence." *Avanti Sys. USA*, 2025 WL 2773306, at *9 n.6. But it exercised jurisdiction over a non-signatory accused of *tortious interference* with that same contract, holding that the claim "cannot be resolved without analysis of the underlying contractual agreements … and therefore the Court may exercise personal jurisdiction…pursuant to the rule articulated in *Magi*." *Id.* at *9. That precise distinction—between claims that arise independently of a contract and those that require its interpretation—reinforces MMA's position here: Alliant's interference claim, like the one in *Avanti*, is contract-dependent, and thus falls squarely within the scope of the forum-selection clauses and the closely-related-parties doctrine.

this action." *Id.* at *3 (quoting *Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054, 1056–57 (D. Minn. 2008)). It further noted that Alliant "does not dispute that it knew of the forum-selection clause," and that "[f]urther evidence of Alliant's close relationship to the Individual Defendants includes that all Defendants share the same legal counsel, and that Alliant has a continued interest in employing the Individual Defendants and their right to solicit former Lockton customers." *Id.* at *3. The court concluded that it did not offend "traditional notions of fair play and substantial justice" to subject Alliant to jurisdiction in the forum it knew its recruits' contracts required. *Id.*

Approximately one month ago, the same court reaffirmed that ruling at summary judgment, holding that Alliant "reasonably should foresee being bound by the forum selection clause because of its relationship to the cause of action and the [Individual Defendants who signed] the forum selection clause," noting that Alliant's interests were "so closely aligned" with the Individual Defendants that they even "share[] the same counsel." *Lockton*, No. 23-cv-00705-SRB, ECF No. 281, Order, at 7 (W.D. Mo. Sept. 23, 2025), attached as Ex. C to the Warner Decl. Those rulings—applying the same doctrine to the same defendant—leave Alliant with no credible argument that enforcing New York's forum clauses here would be unfair or unexpected.

The rulings—by this Court, by other judges in this District, and by another federal court addressing Alliant's identical conduct—leave no room for doubt: a company that knowingly induces and orchestrates breaches of contracts governed by mandatory forum clauses cannot evade jurisdiction in the very forum those contracts select.

## B.    This Court Has Jurisdiction Over Alliant Under New York's Long-Arm Statute

Even apart from the forum-selection clauses, jurisdiction is independently established under New York's long-arm statute. Alliant purposefully directed its conduct toward New York, and the claims here arise from that conduct: it knowingly induced breaches of New York-governed

contracts and then consummated those breaches by diverting and servicing a New York client. C.P.L.R. §302 requires no more. In other words, even if the Court disregarded the forum clauses altogether, Alliant's forum-directed activity alone subjects it to jurisdiction in this state.

### 1.    Section 302(a)(1)

Section 302(a)(1) authorizes jurisdiction over a non-domiciliary who "transacts any business within the state" so long as the cause of action "arises from" that transaction. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). Under the "transacts business" prong, courts consider "whether the non-domiciliary's activities in the state were purposeful." *State v. Vayu, Inc.*, 39 N.Y.3d 330, 332 (2023); *see also id.* at 335 (explaining that CPLR 302 "require[es] but one transaction—albeit a purposeful transaction—to confer jurisdiction in New York") (internal quotation marks omitted). Purposeful acts, in turn, are "volitional acts by which the non-domiciliary avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 376 (2014) (cleaned up). Under the "arises from" prong, courts ask whether "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Henderson v. I.N.S.*, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted).

Alliant's ongoing relationship with the New York public-private fund (Warner Decl. Ex. B (Tr. 32:6–14); Compl. ¶23) client that it captured through its tortious interference is such a transaction. After inducing Oldenburg's breach, Alliant established and continues to service that New York account. That is quintessential business "transacted within the state," and MMA's claims arise directly from it. *See Fischbarg v. Doucet*, 9 N.Y.3d 375, 380–81 (2007) (holding that jurisdiction lies under §302(a)(1) even when the defendant "never enters New York," so long as the defendant purposefully "avails itself of the privilege of conducting activities within the forum State" through sustained contacts that create a "continuing relationship with a New York" party);

*Jewell v. Music Lifeboat*, 254 F. Supp. 3d 410, 418–19 (E.D.N.Y. 2017) (holding that out-of-state defendants who maintained "consistent and continuous communications" and a "sustained business relationship" with New York residents transacted business here within the meaning of §302(a)(1), even without physical presence; explaining that purposeful business conducted in New York "'without having to physically come here does not enable [a defendant] to avoid jurisdiction'") (quoting *Parke–Bernet Galleries v. Franklyn*, 308 N.Y.S.2d 337 (1970)).

### 2.    Section 302(a)(3)

Jurisdiction independently lies under §302(a)(3), which authorizes jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state." N.Y. C.P.L.R. 302(a)(3) (McKinney). Here, the injury to MMA occurred in New York, where MMA lost business, goodwill, and revenue from a New York entity. The loss of a New York client as a direct result of Alliant's tortious interference with Oldenburg's New York–governed contracts and MMA's client relationships is precisely the type of in-state injury that §302(a)(3) was designed to reach. *See Pincione v. D'Alfonso*, 506 F. App'x 22, 26 (2d Cir. 2012) ("Generally, with commercial torts, the situs of the injury is New York if the plaintiff raises the inference that the tortious conduct caused him to lose business or customers within the state.") (citing *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 207, (1978) (finding §302(a)(3) jurisdiction over foreign defendant where "economic injury stems from the threatened loss of important New York customers"); *Cont'l Indus. Grp., Inc. v. Altunkilic*, 2016 WL 11796844, at *3 (S.D.N.Y. Apr. 6, 2016) (finding New York as the "situs of injury" where two of the business partners who were allegedly solicited were "New York manufacturers," and explaining that "[a]lleging specific 'lost sales or lost customers [that are] within the New York market' establishes injury for purposes of §302(a)(3)") (citations omitted); *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 172–73 (S.D.N.Y. 2014) (finding §302(a)(3) satisfied where the defendant's out-of-state conduct diverted payments from

"at least one New York-based customer," holding that "the situs of the injury, in tortious-interference actions, is where the company 'lost business,'" and that the defendant "reasonably should have expected these acts to have consequences in New York"); *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008) (injury exists where "lost sales or lost customers are within the New York market"); *Cleopatra Kohlique, Inc. v. New High Glass, Inc.*, 652 F. Supp. 1254, 1257 (E.D.N.Y. 1987) ("Even if plaintiff was domiciled in another State, the loss of New York customers would constitute a New York injury.").

Alliant's reliance on *Darby Trading* and *BGC Partners Inc. v. Avison Young (Canada) Inc.*, 46 Misc. 3d 1202(A) (N.Y. Sup. Ct. N.Y. Cnty. 2014) (ECF No. 49 at 8), is misplaced. *Darby Trading* dismissed for lack of jurisdiction because the plaintiff "failed to allege any loss of New York customers or sales." 568 F. Supp. 2d at 337. The opposite is true here. The very client whose account Alliant induced the individual defendants to move is a New York public/private fund created under New York law—a paradigmatic participant in the New York market. (*See* Warner Decl. Ex. B (Tr. 32:6–14); Compl. ¶23). The loss of that account is a direct in-state injury: the diversion of a New York customer from the New York market. That is textbook injury "within the state" under CPLR § 02(a)(3). *See Darby Trading*, 568 F. Supp. 2d at 336.

BGC Partners—a nonprecedential trial-level decision involving no New York-based customers at all—is equally inapposite. The court there rejected jurisdiction under §302(a)(3) because the complaint "did not in fact allege that the…customers…were based in New York." 2014 WL 7201754, at *7. That omission was dispositive: without a New York customer, the alleged harm amounted only to "indirect or derivative economic injury" to the New York-domiciled plaintiff, which was insufficient. *Id*. at *8. Here, by contrast, MMA alleges the loss of a New York client, not merely the loss of revenue felt by a New York-based company. That

difference is dispositive. When the diverted business is a New York customer, the situs of injury is New York itself. *See Sybron Corp.*, 46 N.Y.2d at 205–06.

### 3. Due Process Allows Jurisdiction Here

Exercising personal jurisdiction over Alliant easily satisfies the requirements of the Due Process Clause. Under *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945), and its progeny, due process requires that a defendant have "minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

Courts in this District have repeatedly recognized that, in most cases, "the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances than the New York long-arm statute." *Energy Brands Inc. v. Spiritual Brands Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Thus, the same contacts that satisfy C.P.L.R. §302 also meet the federal due process standard. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 n.11 (2d Cir. 2012) ("[T]he jurisdictional analysis under the New York long-arm statute may closely resemble the analysis under the Due Process Clause of the Fourteenth Amendment."); *Glob. Gaming Philippines, LLC v. Razon*, 2023 WL 5935640, at *8 (S.D.N.Y. Sept. 12, 2023); *Energy Brands*, 571 F. Supp. 2d at 469; *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 7 (2006) ("In short, when the requirements of due process are met, as they are here,...[the conduct] is within the embrace of the New York long-arm statute.").

Here, Alliant's contacts with New York are extensive. Alliant maintains six offices in New York, is registered to do business here, and has appointed a New York agent for service of process. (Compl. ¶21). Beyond its physical presence, Alliant deliberately targeted New York commerce by inducing the breach of contracts governed by New York law, designating New York as the forum, and protecting client relationships that include a New York public-private fund. (*Id.* ¶23; ECF No.

17, ¶26; Warner Decl. Ex. B (Tr. 32:6–14)). Those acts constitute purposeful availment of the privilege of conducting activities in this State, and the claims in this action arise directly from that same forum-directed misconduct—making it entirely foreseeable that Alliant would be haled into a New York court to answer for its conduct.

The exercise of jurisdiction is also eminently reasonable. Alliant regularly conducts business in New York and benefits from New York's markets and legal protections; it cannot now claim unfairness in being required to litigate here. *See LaMarca v. Pak–Mor Mfg. Co.*, 735 N.E.2d 883, 888–89 (N.Y. 2000) (finding "had every reason to foresee that its self-initiated contact with New York raised the prospect of defending this suit"). Nor can Alliant plausibly claim surprise— its own employees' contracts with MMA, with which Alliant chose to interfere and induce them to breach, expressly provide for New York jurisdiction, and Alliant has been sued in this District for identical conduct before. (*See supra*, at p. 4).

In sum, Alliant's sustained presence and purposeful activities in New York render the exercise of personal jurisdiction entirely consistent with due process and "the smooth operation of New York markets." *Symmetra Pty Ltd. v. Human Facets, LLC*, 2013 WL 2896876, at *10 (S.D.N.Y. June 13, 2013).

## CONCLUSION

For the foregoing reasons, MMA respectfully requests that the Court deny Alliant's motion to dismiss.

Dated: October 28, 2025
      New York, New York

                               EPSTEIN, BECKER & GREEN, P.C.

                               By:    */s/ David W. Garland*
                                       David W. Garland
                                       A. Millie Warner

875 Third Avenue
New York, New York 10022
(212) 351-4500

*Attorneys for Plaintiff*
*Marsh & McLennan Agency LLC*

## CERTIFICATE OF COMPLIANCE

I certify that Plaintiff's Memorandum of Law in Opposition to Defendant Alliant Insurance Services, Inc.'s Motion to Dismiss complies with the 8,750-word limit set forth in Local Civil Rule 7.1 and in Judge Abrams's Individual Rules & Practices in Civil Cases § 4.A. This computer-generated document was prepared using Microsoft Word, and based on Microsoft Word's word-count function, this document totals 5,697 words, exclusive of the caption, tables of contents and authorities, signature block, and certificate, but is inclusive of footnotes.

Dated: October 28, 2025

*/s/ David W. Garland*
David W. Garland